[S. F. No. 8428.   In Bank.—July 27, 1920.]

# MERCANTILE TRUST COMPANY OF SAN FRANCISCO (a Corporation), as Trustee, etc., Appellant, v. ALL PERSONS, etc., Defendants; MARY F. McGLADE, Respondent.

[1] APPEAL — JUDGMENT — ADMISSIBILITY OF ABSTRACT OF TITLE — RECORD—QUESTION NOT PRESENTED.—Where the record on appeal from a judgment in an action to quiet title shows the admission without objection of an abstract of title pursuant to section 1855a of the Code of Civil Procedure, as secondary evidence of the destroyed public record of a lease, and that the abstract was never subsequently stricken out, the question of its admissibility is not presented, regardless of information in the briefs that it was admitted only tentatively and that finally the trial court concluded that it was not admissible and made its decision as if it were not in evidence.

[2] QUIETING TITLE—ADVERSE POSSESSION—EXTENT OF OCCUPANCY—DECREE UNSUPPORTED BY EVIDENCE.—In an action to quiet title to the major portion of a city block, wherein the defendant claimed title to a portion by adverse possession of her ancestor, a decree in favor of defendant contrary to the testimony of all witnesses as to the extent of such possession is unsupported, notwithstanding the inconsistentcy of the testimony geometrically with the estimated street frontage.

[3] EVIDENCE—RECORD OF INSTRUMENT AFFECTING REAL PROPERTY.—In view of section 1951 of the Code of Civil Procedure which provides that the record of any instrument affecting real property may be used in evidence with like effect as the original instrument itself, if the record purports to show an instrument which would prove itself, so to speak, as where it bears a proper certificate of acknowledgment of execution, the record is admissible without other proof of the existence or genuineness of the instrument, and, in fact, for the very purpose of showing that such a genuine instrument did exist.

[4] ID.—RECORD MADE BEFORE JANUARY 1, 1915—ADMISSIBILITY WITHOUT PROOF OF GENUINENESS.—In view of section 1207 of the Civil Code, the record of an instrument made before January 1, 1915, and also made more than fifteen years before the time at which it is sought to use it in evidence, is admissible without proof of its genuineness, even though the record shows that the instrument would not prove itself because of the want of a proper certificate of acknowledgment or some defect in the manner of execution.

CLXXXIII—24

[5] ID.—DESTROYED RECORD—USE OF ABSTRACT OF TITLE—PURPOSE OF SECTION 1855a, CODE OF CIVIL PROCEDURE.—The fundamental purpose of section 1855a of the Code of Civil Procedure is to make available as secondary evidence of the record, where the latter has been destroyed, abstracts of the record made under such circumstances as to be reasonably reliable, and such evidence, when introduced in a proper case, proves primarily the record, and the record being proved the effect is exactly the same to the extent to which it is proved as if it were itself used in evidence instead of being proven by the secondary evidence of the abstract.

[6] ID.—DESTROYED RECORD OF LEASE—ADMISSIBILITY OF ABSTRACT OF TITLE.—In view of section 1207 of the Civil Code, an abstract of title showing the record of a lease recorded prior to January 1, 1915, and more than fifteen years before the time of trial, is admissible as secondary evidence of the record regardless of whether or not there was a certificate of acknowledgment attached to the recorded instrument.

[7] ABSTRACT OF TITLE—FAILURE TO NOTE DEFECTIVE OR LACKING CERTIFICATE OF ACKNOWLEDGMENT—CERTIFICATION OF PROPER ACKNOWLEDGMENT.—It is the duty of a competent abstractor to catch and note the absence of a certificate of acknowledgment on a recorded instrument, and where the abstract does not note a defective or lacking certificate, the abstractor in effect certifies that the record shows an instrument which is properly acknowledged.

[8] ID.—EXECUTION OF LEASE BY AFFIXING MARK—FAILURE OF ABSTRACT TO NOTE WITNESSING—PROPER EXECUTION.—An abstract of title made before January 1, 1915, and more than fifteen years before trial, which shows the execution of a lease by mark, but fails to show that the execution was witnessed as required by section 14 of the Civil Code, and section 17 of the Code of Civil Procedure, is admissible as secondary evidence of the destroyed record, in view of section 1207 of the Civil Code and of the duty of abstractor to note defects.

[9] EVIDENCE—ABSTRACT AS SECONDARY EVIDENCE OF DESTROYED RECORD OF LEASE—LACK OF PERFORMANCE UNTENABLE OBJECTION. An objection to the admission of an abstract as secondary evidence of the destroyed record of a lease on the ground of the absence of proof of anything being done under the lease, is based upon a rule applicable to ancient documents, and not applicable to a record which of itself proves the instrument or to secondary evidence of that record.

[10] ID.—ADVERSE CLAIMANT—DECLARATION AGAINST INTEREST IN LEASE.—An acknowledgment by an adverse claimant in a lease that he held the property as tenant and not as owner is admis-

sible against him, as a declaration against interest, regardless of whether the lease was validly executed on the part of the lessor.

[11] Id.—Sufficiency of Abstract—Presumption.—An abstract is not rendered inadmissible as secondary evidence of the record of a destroyed lease on the ground that it is but a summary of the contents, since it is to be presumed that no material terms have been omitted.

[12] Id.—Ancient Records—Degree of Proof.—In dealing with old instruments and muniments of title, the parties and witnesses to which are dead, and as to whose execution or the circumstances under which they were executed, or as to whose exact contents in case they or the original record of them are lost, certain and positive evidence is not possible, the same exactitude and certainty of proof cannot be required as is properly required in the case of more recent events, and the courts must go upon probabilities and presumptions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, R. L. McWilliams and H. W. Clark for Appellant.

Sullivan & Sullivan and Theo. J. Roche for Respondent.

OLNEY, J.—This is a so-called "all persons" suit brought to establish the title of the plaintiff to certain real estate in the city of San Francisco. One Mary F. McGlade appeared in the action as a defendant and answered, claiming to be herself the owner of a one-half interest in a portion of the property, with the result that as to this portion the action assumed the character of an ordinary suit to quiet title by the plaintiff against Mrs. McGlade. The trial court found that Mrs. McGlade was in fact the owner of the interest claimed by her, and gave judgment accordingly, from which the plaintiff appeals. One of the grounds urged by the plaintiff for reversal is that the evidence does not justify the finding of ownership in the defendant.

The property as to which the plaintiff sought to establish title was the major portion of the block lying between Washington and Oregon Streets on its southerly and northerly

sides, respectively, and fronting on its eastern side on The Embarcadero, formerly East Street, which forms the waterfront of the city. Washington and Oregon Streets run very nearly east and west, but The Embarcadero at this point runs nearly northwesterly and southeasterly, so that Washington Street starts from it at an angle, and the corner of the block formed by Washington Street and The Embarcadero is a gore, or an acute angle of about forty-five degrees. The portion of the property in which the defendant claims an interest is this gore.

The plaintiff is admittedly the owner of the record title to all the property to which it sought to establish title, including the gore. It acquired it from one Richard D. Chandler subsequent to the San Francisco fire and earthquake of 1906. Chandler had acquired it in 1882 from one Garrison, who in turn had acquired it from the state in 1854. The defendant's claim is of title by adverse possession of the corner on the part of her father, one Drobaz, who died in 1905, and to a one-half interest in whose estate she succeeded. Included in the property originally acquired by Garrison from the state and subsequently conveyed by him to Chandler, and passing from the latter to the plaintiff, was the lot immediately to the west of the corner. Drobaz appears in possession of this lot in 1866, admittedly as a tenant of Garrison, and continued in such possession, paying rent therefor, first to Garrison and then to Chandler, until the time of his death. After his death this possession as tenant was continued by his heirs until all the improvements were destroyed by the fire of 1906. Along with the possession of this lot, Drobaz had possession of the corner, and the final question in the present controversy is as to whether he held such possession as tenant, or under a claim of adverse and independent ownership. Drobaz never paid the taxes on the property, but the block was not accurately described on the tax assessment maps and it seems to be assumed that the corner was never assessed.

The lot to the west of the corner was improved with a two-story building and Drobaz appears in 1866 in possession of it as tenant. The corner to the east was unimproved and had not been filled and was still covered by the waters of the bay. Between 1866 and 1875 Drobaz inclosed the corner with a small fence and used it for drying nets, and filled it

in. In 1875 he constructed a building on it immediately against the building on the lot to the west. Both buildings were destroyed by fire about 1877, and thereupon Drobaz erected a new building covering both pieces of property. The new building was apparently built as a unit, and without reference to any difference in ownership between the eastern and western portions of the land it occupied. There was, however, a stairway leading to the second story from Washington Street, which, according to the testimony of all the witnesses on the point, was on, or approximately on, the east line of the old building occupied by Drobaz as tenant. This new building remained until the fire of 1906, when all possession by the heirs of Drobaz ceased, without any attempt on their part to retake possession and without any assertion of interest until after the commencement of the present action in 1911.

There was considerable evidence introduced in addition to that showing the foregoing, some of which tended to show a claim of ownership by Drobaz to the corner, and other of which tended to show that he occupied it only as a tenant in conjunction with the lot to the west which he admittedly held in that capacity. It is not necessary, however, for the purposes of this opinion to state more than one bit of this evidence. The public records of San Francisco were for the most part destroyed by the fire of 1906, and for the purpose of permitting the use of secondary evidence of them, the legislature in 1911 adopted a new section of the Code of Civil Procedure numbered 1855a. The material part of it reads:

"When, in any action, it is desired to prove the contents of any public record or document lost or destroyed by conflagration or other public calamity and after proof of such loss or destruction, there is offered in proof of such contents (a) any abstract of title made and issued and certified as correct prior to such loss or destruction, and purporting to have been prepared and made in the ordinary course of business by any person, firm or corporation engaged in the business of preparing and making abstracts of title prior to such loss or destruction; . . . the same may, without further proof, be admitted in evidence for the purpose aforesaid. . . ."

Pursuant to this section, there was received in evidence on behalf of the plaintiff an old abstract of title for the purpose

of proving the record of a certain lease. This lease, according to the abstract, was one by Garrison to Drobaz covering all the property occupied by the latter, that is, covering the corner now in dispute, as well as the lot to the west, and describing it all as a single piece without division. It was made, according to the abstract, in 1876, which it is to be noted, was about the time that Drobaz first constructed a building on the corner. [1] So far as the bill of exceptions shows, the abstract was admitted for the purpose of showing the record of this lease without objection, was never stricken out, and the decision of the trial court was made with it as a part of the evidence before it. We are informed by the briefs, however, that it was admitted in evidence only tentatively, and that finally the court concluded that it was not admissible and made its decision as if it were not in evidence. If this were the fact, as undoubtedly it was, since both sides assume it, the plaintiff should have insisted upon some ruling being made by the lower court which would appear in the bill of exceptions, and show the rejection of the evidence. As the record now stands, the question as to its admissibility is not presented and the decision of the lower court against the plaintiff appears as if made with this evidence before it, although its very cogent and persuasive character is plain. Whether, in spite of its character in this respect, there was other evidence sufficient to overcome it and to sustain the decision, we need not consider, however, since a reversal is necessary on another ground.

The whole theory of the defendant's case is that, while Drobaz was tenant of the lot to the west of the corner, he was not a tenant as to the property east of the east line of the building on that lot. The proof is plain and is not controverted that west of this line the property he occupied was occupied by him only as a tenant. The proof by the defendant as to the location of the westerly boundary of the property in which she claimed an interest by reason of the adverse possession of her father was always as to the location of the east line of the old building to the west of the corner, and of the stairway built on that line when the old building was destroyed in 1877 and a new one erected covering both pieces of land. The evidence is also unanimous that this line ran at right angles to Washington Street. It is evi-

dent, also, that almost necessarily it must have so run.   The lot to the west fronted on Washington Street and was not a corner lot.   There was nothing to require a building upon it to be built upon a bias.   It is almost inconceivable that a building erected on such a lot would run, not at right angles with the street on which it fronted, but on a bias of about forty-five degrees. Nevertheless, the property in which the judgment decrees that the defendant has an interest is described as a parallelogram whose frontage on Washington Street is the distance between the corner on The Embarcadero and a point which it appears clearly from the evidence was located as the point where the east line of the old building began, and whose sides are the line of The Embarcadero on the east, and a line parallel thereto on the west.   In other words, the west line of the property in which the defendant is decreed to have an interest runs northwesterly from a point on Washington Street and at an angle of about forty-five degrees with it, while the west line of the property in which alone, according to the proof, the defendant claims or can have an interest runs from the same point northerly and at right angles to Washington Street.   The major portion of the property described in the decree is west of this right angle line, and is a part of the property admittedly occupied by Drobaz as tenant and the plaintiff's title to which was not questioned at the trial.

The defendant's only answer to this point is that the witnesses testified that the gore occupied by Drobaz had a length on The Embarcadero of seventy or seventy-three feet, and that this is inconsistent with a west line running at right angles to Washington Street, since such a line would intersect The Embarcadero at a point considerably less than seventy or seventy-three feet from the corner.   But the witnesses were all testifying from memory as to a fact observed many years before.   Estimates of distances are rarely accurate, even when the observations on which they are based are fresh.   The testimony, on the other hand, that the building on the lot to the west ran at right angles to the street is quite reliable.   If the building had run on a bias, particularly a bias anything like as great as forty-five degrees, it would have been a most noticeable thing, certain to be observed and remembered.   It would be wholly unreasonable to allow the evidence to this effect on which all the wit-

nesses agree, and which is supported by all the probabilities of the situation to be overcome by its inconsistency geometrically with the estimated frontage of the gore on The Embarcadero. **[2]** In this respect the decree is plainly not supported by the evidence, and a new trial should be had.

For the guidance of the court and parties upon a new trial, it is advisable that we pass upon the admissibility of the evidence as to the lease by Garrison to Drobaz previously mentioned, since the question is certain to arise, and although not in reality presented by the present record has been fully argued before us.

No objection is made to the abstract for want of any of the preliminary matters required by section 1855a of the Code of Civil Procedure, previously quoted. The objections made are some seven in number. The first and most fundamental is that there was no proof other than the abstract itself of the genuineness of the lease. The same point is put by counsel in a little different form in the reiterated objection that other than the abstract there was no proof that the lease ever in fact existed. Closely connected with the point also is the second objection that the abstract does not show that the instrument as recorded bore any certificate of acknowledgment. This objection is closely· connected with the first, because if the record did show a proper certificate of acknowledgment, it would, under our code, have proved *prima facie* the execution of the original instrument. Both objections, however, involve a misconception of the statutory provisions permitting (1) the use in evidence of the record of an instrument instead of the instrument itself, and (2) the use of an abstract where the record has been destroyed.

**[3]** First, in regard to the use of a record. Our code provides (Code of Civil Procedure, section 1951) that the record of any instrument affecting real property may be used in evidence with· like effect as the original instrument itself. If the record purports to show an instrument which would prove itself, so to speak, as where it bears a proper certificate of acknowledgment of execution, the record is admissible without other proof of the existence or genuineness of the instrument and, in fact, for the very purpose of showing that such a genuine instrument did exist. **[4]** There is also at least one case other than this just mentioned where the record alone is admissible and sufficient for the same pur-

pose. That case is the one of a record made before January 1, 1915, and also made more than fifteen years before the time at which it is sought to use it in evidence. Section 1207 of the Civil Code, provides, in effect, that the record of any instrument recorded prior to January 1, 1915, may be used in evidence "notwithstandng any defect, omission, or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, or the absence of any such certificate." The section further provides that when the record was made within fifteen years of the time it is sought to use it in evidence, proof must first be made of the genuineness of the instrument. The plain and necessary implication is that such proof is not required where the record is more than fifteen years old. The result is that even though the record shows an instrument which would not prove itself because of the want of a proper certificate of acknowledgment or some defect in the manner of execution, yet if the record be fifteen years old and was made prior to January 1, 1915, these latter facts are the equivalent and serve the purpose of the proof of genuineness ordinarily required as a prerequisite to the introduction in evidence of an instrument or its record. They raise, in other words, a *prima facie* presumption that the instrument is genuine.

Second, in regard to the use of an abstract of the records. [5] The fundamental purpose of section 1855a of the Code of Civil Procedure, heretofore quoted, is to make available as secondary evidence of the record, where the latter has been destroyed, abstracts of the record made under such circumstances as to be reasonably reliable. Such secondary evidence, when introduced in a proper case, proves primarily the record, and the record being proved the effect is exactly the same to the extent to which it is proved as if it were itself used in evidence instead of being proven by the secondary evidence of the abstract. In other words, if the secondary evidence of the abstract proves the record of an instrument, which record if not destroyed could have been introduced in evidence without other proof of the genuineness of the instrument recorded, and would have the effect of raising a *prima facie* presumption of genuineness, then the abstract may be introduced without such other proof and with like effect.

Applying these propositions to the case at bar, no objection is made, as we have said, that the case is not one where a proper abstract may be used as secondary evidence, or that the particular abstract did not conform to the statutory requirements. The abstract showed, furthermore, the record of a lease executed ostensibly by Drobaz as lessee, recorded prior to January 1, 1915, and more than fifteen years before the time of trial. [6] It was sufficient, therefore, as secondary evidence of a record which, under section 1207 of the Civil Code, regardless of whether there was a certificate of acknowledgment or not, was admissible in evidence without other proof of the genuineness of the instrument recorded, and raised a *prima facie* presumption of such genuineness. The abstract being sufficient as such secondary evidence, and the case being one where secondary evidence was admissible, it follows that it was admissible without further proof and had the effect of making a *prima facie* showing that the lease whose record it showed was genuine.

We would not, however, rest the disposition of these objections entirely on the fact that the record proven was one which came within the provisions of section 1207 of the Civil Code, with the possible implication that we did not consider the abstract sufficient to prove a record showing an instrument bearing a due certificate of acknowledgment, so that without section 1207 of the Civil Code, the record would be admissible in evidence without further proof. The abstract, to be sure, contains no notation of an acknowledgment of execution of the lease. But it contains no notation that the record failed to show such acknowledgment. An abstract is but a summary of the record. It does not purport to set it out in full. Some abstractors always note the acknowledgment; others do not. The present abstract in some instances notes it, and in others it does not. Among the latter instances are a number of instruments such as mortgages and trust deeds to banks or bankers which it is inconceivable were not acknowledged. But while a competent abstractor may or may not note the fact of acknowledgment if it appear, he will invariably note its absence if it does not appear. [7] The absence of a certificate of acknowledgment conforming to the statutory requirements for such certificates is a defect which it is his duty to catch and note. If he does not note its absence or some defect in it,

he in effect certifies that the record shows an instrument which is properly acknowledged.

In *Attebery* v. *Blair,* 224 Ill. 363, [135 Am. St. Rep. 342, 91 N. E. 475], an abstract was offered in evidence under a statute much the same as ours to prove the destroyed record of certain deeds. It was objected that the abstract did not show that the deeds were under seal, a requisite for their validity according to the Illinois law. The court held in effect that if the record had not shown that the deeds were under seal, it was the duty of the abstractor to note that fact, and there being no note to that effect, the abstract was evidence that seals were shown by the record. There is no distinction in principle between this case and the present one where the abstract does not note a want of a certificate of acknowledgment or any defect in it. (See, also, Warvelle on Abstracts, 3d ed., p. 244.)

We might add that the presumption arising from the fact that the abstract does not note a defective or lacking certificate of acknowledgment is strengthened by the fact that the instrument should not have been recorded unless it bore a proper certificate; and yet it was recorded. Altogether, we have no hesitation in holding that the abstract was sufficient to prove *prima facie* as a matter of secondary evidence that the record of the lease showed a due certificate of acknowledgment entitling the lease to record, and making the record sufficient evidence in itself without recourse to the curative provisions of section 1207 of the Civil Code.

[8] What has already been said answers the third objection which is that, the abstract shows that Drobaz, who was illiterate, executed the lease by affixing his mark without showing that the execution in that fashion was witnessed as required by section 14 of the Civil Code and section 17 of the Code of Civil Procedure. If this defect existed, it came directly within the curative provisions of section 1207 which apply to defects in the manner of execution as well as in the matter of acknowledgments. Furthermore, such a defect is one which again it was the duty of the abstractor to catch and note, and his certificate without such note appearing is in effect a certificate that the defect did not appear in the record, so that the abstract is sufficient *prima facie* evidence that it did not exist.

[9]    The fourth objection is that there is no proof that anything was done under the lease, that is, the facts which appear, such as the payment of rental by Drobaz and his possession of the property, are as consistent with the defendant's theory that Drobaz was the tenant only of the property to the west of the gore as with the plaintiff's theory that he was tenant as to all that he occupied.    The rule suggested by the objection is one applicable to ancient documents.    It has no reference to a record which of itself proves the instrument or to secondary evidence of that record.    It is not a requirement of the code sections which make the record competent primary evidence and the abstract competent secondary evidence of the record.

[10]    The fifth objection is that according to the abstract the lease was actually executed, not by Garrison himself, but by one Pratt on his behalf as his attorney in fact, and the existence of a power of attorney by Garrison to Pratt was not shown.    Of course, if one were claiming title through Garrison by means of an instrument purported to be executed for him by some attorney in fact, or were seeking to rely upon such an instrument as against him or against an interest at the time in him, proof of authority on the part of his purported agent would be essential, unless the instrument were an ancient one and the circumstances such that authority would be presumed.    But in the present case it is sought to use the instrument, not against Garrison or any interest he had, but against the interest of the other party to it, Drobaz. As a declaration against interest on the part of Drobaz, an acknowledgment by him that he held the property not as owner but as tenant, the effect of the instrument is not changed by the fact that it may not have been validly executed on the part of Garrison.

The sixth objection is that the lease calls for a monthly rental of $250, while so far as the evidence shows the only rental paid by Drobaz was $150 a month.    If there were this discrepancy in fact between the terms of the purported lease and the actual conduct of the parties, it would seem that it would affect only the weight to be given to the evidence, not its admissibility.    The claimed discrepancy, however, does not in fact exist.    The only evidence as to the amount of rental paid by Drobaz is as to rental paid subsequent to the expiration of the term of the lease.    There is no evidence whatever as to the amount of rental actually

paid by Drobaz during the time the lease, if genuine and acted upon by the parties, would have been in force.

[11] The seventh and last objection is that the abstract is but a summary of the contents of the lease and does not purport to state them in full, and it may be that there were further terms not set out which would materially change the weight and effect to be given to the instrument. But it was the duty of the abstractor to set out the substance of all material terms. (*Taylor* v. *Williams,* 2 Colo. App. 559, [31 Pac. 504]; *Attebery* v. *Blair,* 224 Ill. 363, [135 Am. St. Rep. 342, 91 N. E. 475]; Warvelle on Abstracts, 3d ed. p. 2; 1 Corpus Juris, 366.) The strong probability and the presumption are that there were no material terms not set out.

[12] Upon this whole subject we would say that in dealing with old instruments and muniments of title, the parties and witnesses to which are dead, and as to whose execution or the circumstances under which they were executed, or as to whose exact contents in case they or the original record of them is lost, certain and positive evidence is not possible, the same exactitude and certainty of proof cannot be required as is properly required in the case of more recent events. The courts must go upon probabilities and presumptions. To do otherwise would be to destroy valid titles, not to sustain them. In the present case the abstract in question was made by one of the best known and most reliable abstractors of the early years of San Francisco. It is before us, and we venture to say that no lawyer of experience in the examination of titles in that city but would, on examining the abstract, feel reasonably certain that it set forth with accuracy the material terms of the instruments noted in it and defects in acknowledgment or execution which would be manifest on the face of the record. The courts should not by a narrow construction of the code sections which make this evidence available blind themselves to the light which it affords, in many cases, because of the wholesale destruction of our public records, the only reliable light which can now be had.

Our conclusion is that the abstract was admissible for the purpose of proving the lease and its execution by Drobaz.

Judgment reversed.

Shaw, J., Lawlor, J., Wilbur, J., and Angellotti, C. J., concurred.