[Civ. No. 4633.  First Appellate District, Division Two.—September 20, 1923.]

## G. NELSON, Appellant, v. J. WARREN DUTTON et al., Respondents.

[1] CONTRACT—RECOVERY OF MONEY—CONSTRUCTION OF DAM—CHARACTER OF DAM—HOW DETERMINED.—In an action to recover a sum of money under the terms of a contract between plaintiff's assignors and the defendants, giving the latter the right to construct a dam in a certain slough and providing for the payment by defendants of the sum sued for before the construction of

said dam, the contract containing no particular description of the dam to be constructed, its character was to be determined by a consideration of the purpose to be served thereby as expressed in the contract.

[2] ID.—IMMATERIAL FINDING.—In such action, the finding that no dam of any kind was constructed, although not in accord with the evidence, was immaterial because the rights of the parties were concluded by the supported finding that no dam as contemplated by the parties was constructed; and hence the erroneous finding was not prejudicial.

[3] ID.—PAYMENT—TIME—VIEW OF TRIAL COURT.—In such action, the view taken by the trial court that the money specified in the contract was to be paid only upon the construction of a dam contemplated by the parties was the most reasonable and equitable one.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. S. Andrews and Hadsell, Sweet & Ingalls for Appellant.

Gregory & Goodell, D. D. Sales and Clarence Coonan for Respondents.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against him in an action brought to recover three thousand five hundred dollars from the defendants alleged to have been due under the terms of a written contract between defendants and plaintiff's assignors, F. N. Chaplin and Mittie M. Chaplin, his wife.

Mr. and Mrs. Chaplin and the defendants were owners of real property bordering on "Roaring River," a slough separating Hammond and Van Sickle Islands, Solano County, California. The testimony disclosed that this slough is located near the place where the Sacramento and San Joaquin Rivers empty into Suisun Bay and is filled with fresh water when the water in the Sacramento and San Joaquin Rivers is high and with salt water during the time that the water in said rivers is low. The original parties to the contract involved upon this appeal conceived the idea of

creating a fresh-water reservoir in said "Roaring River" by placing dams at either end thereof. To effect this purpose they executed a contract of which the following portions are significant upon this appeal:

"That whereas the parties hereto (F. N. Chaplin and Mittie M. Chaplin, Bay Farms, Inc., and J. Warren Dutton) are owners and in possession of marsh lands situated in the southerly portion of the County of Solano, in the State of California, in which it is desired for the benefit thereof to construct, erect and maintain certain works for reclamation and irrigation; and

"Whereas there is a slough known as 'Roaring River' between Van Sickle and Hammond Island, and another water course by the name of 'Wreck Slough' between Van Sickle Island and Wheeler Island, and it is desired for the purposes hereinbefore mentioned to construct such dams at or near the mouth or outer extremities of said sloughs.

"Now therefore, for and in consideration of the sum of Ten Dollars ($10) in gold coin in hand paid to the said parties of the second part (Mr. and Mrs. Chaplin) by the party of the first part (Bay Farms Co., Inc.) and party of the third part (J. Warren Dutton), the receipt whereof is hereby acknowledged, and in further consideration of the covenants hereinafter set forth and the benefits which accrue to said respective lands, it is hereby stipulated and agreed as follows:

"That such dam may be constructed and maintained by any or all of the parties hereto, within a period of three years from the date hereof, and that when so constructed, the parties of the second part shall have the right to use water from said Roaring River and Wreck Slough in such quantities and at such times as they may desire, without charge therefor on the part of the party of the first part and party of the third part.

"That no part of the construction, cost of maintenance shall be charged against said party of the second part by either the party of the first part or the party of the third part;

"That before such dam in said Roaring River shall be constructed there shall be paid by or on behalf of the parties of the first and third part to the party of the second part, the further sum of three thousand five hundred dollars ($3,500) in gold coin of the United States."

The plaintiff set out in his complaint the contract between his assignors and the defendants and alleged: "That after the execution of said contract as aforesaid, the defendants built and constructed in the slough known as 'Roaring River' . . . a dam such as was contemplated by the parties in the aforesaid agreement." It is also alleged that before and after said dam was built and constructed, the plaintiff's assignors made demand upon the defendants for the payment to them of the sum of three thousand five hundred dollars, as provided in said agreement; that the defendant refused, and still refuses, to pay the same, etc.

The answer denied that after the execution of the contract the defendants, or either of them, constructed a dam such as was contemplated by the parties in said agreement or any other dam.

Upon the trial the contested issue was whether or not the work done by the defendants resulted in the creation of a dam contemplated by the parties. The trial court found: "That it is not true that after the execution of said contract that defendants or either of them built or constructed in the slough known as Roaring River a dam such as was contemplated by the parties . . . or any dam of any kind, character or description." The latter portion of this finding to the effect that no dam of any kind, character, or description was constructed by defendants is challenged by the appellant. In his position upon this question, appellant is undoubtedly correct. The evidence discloses, as tacitly admitted by the respondents, that some sort of a dam was actually constructed and, later, almost entirely destroyed by the defendants. The error in this portion of the finding is not prejudicial to the appellant, however, if the position of respondents is well taken that the vital issue at the trial was whether or not a dam contemplated by the parties had been constructed, and that the evidence amply supports the finding that such a dam was not constructed. Let us discuss this contention of respondents.

In support of the finding that no dam contemplated by the parties was constructed, the record contains evidence to the effect that to accomplish the purposes of the contract, as stated therein and as expressed by Mr. Chaplin on the witness-stand, it was necessary to erect a dam which would be permanent in character and which would contain flood-

gates. These gates were essential for maintaining a "fresh-water reservoir" in Roaring River, the purpose of the parties in entering into the contract as expressed by Mr. Chaplin. The record shows that the defendants deposited considerable dirt in the entrance to Roaring River, creating an obstacle which temporarily blocked the entrance to the slough; that they thereupon discontinued their operations to allow this dirt to settle and form a substantial and permanent base for the dam; that the dirt did settle considerably and that it would have been necessary to have added a large quantity of dirt to the structure after the settling process was completed and to have built floodgates before the dam could be effective for the purposes contemplated by the parties when they entered into their contract. However, before these things were done, for some reason, it became apparent to the defendants that the object contemplated could not be attained, and the defendant Dutton thereupon caused a cut to be made in the dirt which he had caused to be piled in the entrance to Roaring River and the tide water gradually washed it away until, at the time of the trial, a very small amount thereof was to be seen and this was steadily being washed away by the water.

Now the appellant contends that by the terms of the written contract the only specification for the dam "contemplated by the parties" was a dam erected at the entrance of Roaring River; that any obstruction in a stream is a dam; that when it was shown that an obstruction was created by the defendants at the place mentioned in the contract, the inquiry should have ended and the finding should have been that a dam contemplated by the parties was constructed by the defendants, and a judgment should have been given for the plaintiff.

[1] The trial court took a different view of the situation and evidently concluded that as the contract contained no particular description of the dam to be constructed, its character should be determined by the consideration of the purpose to be served thereby as expressed in the contract. This view is in harmony with the rule of construction requiring contracts to be considered as a whole (sec. 1641, Civ. Code), and also in harmony with the rule that the circumstances and situation of the parties and the subject matter of the contract at the

63 Cal. App.—46

time of the making thereof are admissible in evidence as throwing light upon the intention of the parties when any uncertainty exists regarding this matter. (Sec. 1647, Civ. Code; sec. 1860, Code Civ. Proc.) We think the view of the trial court was the proper one. It was the only reasonable view of the contract and it is always a rule of construction that contracts will be construed in a reasonable manner if possible. (6 Cal. Jur., sec. 169.) In the case of *Stein* v. *Archibald,* 151 Cal. 220 [90 Pac. 536], it was said: "It is a well-settled principle applicable to the construction of contracts that where one construction would make the contract unreasonable, unfair or unusual and extraordinary and another construction equally consistent with the language would make it reasonable, fair and just, that the latter construction is the one which must be adopted. It is also a principle of construction with respect to ambiguous contracts that the circumstances surrounding and known to both the parties at the time of the execution of the contract may be taken into consideration in determining the meaning intended to be conveyed." It would not have been reasonable to construe the contract as an obligation on the part of the defendants to pay three thousand five hundred dollars to the plaintiff's assignors if said defendants cast a few loads of dirt into the entrance to Roaring River, which in no way accomplished the objects of the parties nor benefited the defendants in any manner. It was the duty of the trial court to construe the contract in such a way as to render it effectual to carry out the purpose of the parties as expressed in the contract. (*Callahan* v. *Stanley,* 57 Cal. 476, 479.)

Not only was the view adopted by the trial court the most reasonable view of the contract, but it was also the view adopted by the plaintiff in his pleading, where he expressly invited the issue regarding the character of the structure contemplated by the parties. In the case of *Silvers* v. *Grossman,* 183 Cal. 696 [192 Pac. 534], it was said: "On the contrary, inasmuch as the instrument is ambiguous, and the construction put upon it by the averments of the answer is one of which the instrument is readily susceptible, the pleader is bound by the interpretation adopted by him."

[2] In the light of the views above expressed, it is apparent that the finding that no dam of any kind was constructed, although not in accord with the evidence, is imma-

terial because the rights of the parties are concluded by the supported finding that no dam as contemplated by the parties was constructed. Therefore, the erroneous finding is not prejudicial to appellant.

[3] One other point urged by the appellant requires mention. It is his position that the character of the dam is immaterial in this action, as the defendants were required by the terms of the contract to pay three thousand five hundred dollars to plaintiff's assignors before starting upon the construction work. We think the contract presents some uncertainty upon this matter and the trial court has taken a view opposed to appellant's contention, which view was doubtless greatly influenced by the fact that the breach alleged by plaintiff was in failing to pay the amount after the construction of a dam contemplated by the parties. Upon this phase of the contract the trial court has also taken the most reasonable and equitable view.

We find no error in the proceedings in the trial court and the judgment seems to attain substantial justice between the parties. It does not appear that the defendants received any benefit whatsoever from their temporary obstruction of the slough in an attempt to accomplish the avowed object of the contract, nor that the plaintiff's assignors suffered any actual detriment by reason of such unsuccessful attempt upon the part of the defendants, nor that the temporary structure erected by the defendants fulfilled the express purpose of the contract: "to construct, erect and maintain certain works for reclamation and irrigation." It is obvious that a dam without floodgates and in the process of settling could not aid in the work of reclamation and irrigation under the circumstances presented in this case. It is not the policy of courts of justice to construe contracts in a manner that will work hardship and injustice where they are susceptible of a more equitable construction.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 19, 1923.