[Civ. No. 6394. First Appellate District, Division One.—December 6, 1928.]

HARRY NATHAN, Plaintiff and Appellant, v. AMERI- CAN PHOTOPLAYER CO. (a Corporation), Defend- ant and Respondent; LOUIS E. GOODMAN, Inter- vener and Appellant.

Dowd & Reagh for Plaintiff and Appellant.

Brownstone & Goodman for Respondent and Intervener.

SPENCE, J., *pro tem.*—Plaintiff and appellant Harry Nathan brought this action against defendant and respondent American Photoplayer Co., seeking judgment in the sum of $2,500 upon an alleged express contract and also upon common counts for services as a financial agent or broker in procuring the extension of credit to respondent by a New York bank. The cause was tried by the court without a jury and judgment entered in favor of defendant and respondent, American Photoplayer Co., from which judgment plaintiff and appellant Harry Nathan appeals.

Louis E. Goodman intervened as a stockholder of the defendant and respondent corporation and moved that the action be dismissed on the ground that the corporation had forfeited its charter in 1924 by reason of failure to pay its taxes and had therefore ceased to exist prior to the commencement of this action. The motion was denied, and from this order the intervener and appellant Louis E. Goodman appeals. It was stipulated by the parties that the bill of exceptions and transcript might be used on the appeal of the intervener as well as on the appeal of plaintiff.

On this appeal plaintiff and appellant, Harry Nathan, contends that the findings are not supported by the evidence. Plaintiff and appellant failed to embody in the bill of exceptions any objections specifying the particulars in which the evidence is alleged to be insufficient as required by section 648 of the Code of Civil Procedure. We have, however, examined the transcript which purports to set forth all of the evidence introduced and conclude that the evidence is sufficient to support the findings on certain material issues and sufficient to justify the decision in favor of defendant and respondent. These findings which were against plaintiff and appellant and are supported by the evidence were the findings upon material issues which were essential to plaintiff and appellant's cause of action. If there were additional findings made by the court which were not supported by the evidence, this would not warrant a reversal of the judgment. "It is only when a judgment rests upon some particular finding for its validity and support that the lack of sufficient evidence to support such finding becomes material; complaint may not be made of an unsupported finding which, had it been made the other way,

would not have affected the judgment." (24 Cal. Jur. 993, 994; *Nelson* v. *Dutton*, 63 Cal. App. 717 [220 Pac. 12]; *American Nat. Bank* v. *Donnellan*, 170 Cal. 9 [Ann. Cas. 1917C, 644, 148 Pac. 188]; *Schurman* v. *Look*, 63 Cal. App. 347 [218 Pac. 624].)

The amended complaint here consisted of four counts, all relating to the same transaction or subject matter. The first count alleged an agreement whereby defendant "in consideration that plaintiff would procure the extension of credit in the sum of $100,000, or any part thereof, from any banking corporation in the City of New York to defendant, promised, agreed and undertook forthwith upon the same being so procured to pay plaintiff the sum of five (5%) per cent of the amount of any credit so established for defendant." It further alleged that plaintiff had "fully and in all things complied with all the conditions and obligations of said contract resting upon him and . . . under the terms of said contract secured for defendant . . . an agreement to extend to defendant credit to the sum of fifty thousand ($50,000) dollars." The second count is substantially the same except that the words "the extension of credit" are changed to "a loan of money." The third and fourth counts were drawn somewhat in the form of common counts for work and services. All of the material allegations were put in issue by the answer and the court found against the plaintiff and appellant upon practically all of these allegations.

We are satisfied that under the evidence plaintiff's only color of claim to a right of recovery was under the first alleged cause of action. In fact, the plaintiff himself takes the position in the closing brief in dealing with the merits of the case, that "plaintiff was under the duty of showing (a) a contract between himself and the defendant; (b) that he secured a customer, ready, willing and able to extend the credit on terms which were either the same as those proposed by defendant, or satisfactory to it; (c) that the failure of the transaction to go through was neither the fault of himself or the customer." We will, therefore, direct our attention to the first alleged cause of action, for if the evidence was sufficient to support findings adverse to plaintiff on the material allegations therein contained, the plaintiff under the evidence here would not be entitled to

recover under the other alleged causes of action covering the same subject matter.

We will refer to plaintiff and appellant as "Nathan" and the defendant and respondent as "the company." The company was doing a large business in the manufacture of musical instruments, which were frequently sold on installment contracts, payable over a period of 24 to 30 months. The company had previously received credit from various banks in financing its business. Nathan was a financial agent or broker in New York. Nathan and Werner, the president of the company, had conversations in the early part of 1923 relating to the possibility of Nathan obtaining accommodations for the company from a New York bank. Werner stated that the company would want a line of credit of from $50,000 to $100,000, one-half to be on the company's paper and one-half to be on the company's paper guaranteed by a bonding company. With relation to the nature of the "line of credit" Werner testified without contradiction that he advised Nathan that the bank would have to agree to renewals of the loans over the length of time covered by their installment contracts, and that the bonding company which would be secured by the installment contracts required that such arrangement be made with the bank. Both parties testified that the guarantee of the bonding company was to cover only one-half of the amount. There is a conflict as to the amount of compensation which Nathan would receive, and also as to whether any compensation would be due unless the loan was actually made. We deem these matters immaterial, however, as the evidence failed to show that Nathan ever obtained "a line of credit" upon the terms proposed.

Several months after the conversations between Nathan and Werner, and after Nathan had failed to get accommodations on the terms proposed, the committee of the Irving National Bank took action as shown by the minutes of their meeting of June 1, 1923, for "$50,000 on collateral consisting of installment purchase notes. Loan for 4 months guaranteed in total by Fidelity and Casualty Company of Baltimore, approved provided commensurate balances are carried." Plaintiff's Exhibit I shows that Nathan, in applying to the bank stated that "Obligations will be paid without renewal and they will keep commensurate balances."

Nathan wired the company on June 12th advising them briefly, but not in detail, of the action of the bank. In reply, M. J. Samuels, vice-president of the company, wired Nathan on June 13th, asking him to have the bank forward necessary resolutions and forms of notes and requesting Nathan to "Please write details." No resolutions or note forms were ever received from the bank, nor did Nathan ever advise the company of the details upon which this loan could be arranged. No loan was consummated with the bank on the terms proposed or any other terms. Shortly thereafter the company was placed in the hands of a committee and underwent a reorganization.

From a review of the evidence it is apparent that Nathan never performed the services contemplated. The uncontradicted testimony shows that Nathan was to procure (1) a "line of credit" of from $50,000 to $100,000; (2) upon an understanding that loans were to be renewed for a period equal to the life of the company's installment contracts; (3) with one-half of the amount to be guaranteed by a bonding company and the other half to be without such guarantee. All that the testimony tends to show that Nathan did procure was (1) a loan of $50,000, (2) for a definite period of four months with the understanding given to the bank by Nathan that the obligation would be paid without renewal, (3) and the entire amount to be guaranteed by a bonding company.

It affirmatively appeared from the bank records introduced by Nathan himself as exhibit I that he called at the bank on June 11th and that he was advised that his original proposition "was not interesting" and that when Nathan was advised of the terms upon which the bank would make a loan, it "was not pleasing." He then told them that he would like to bring some further information and see if they "could not get a different point of view." Instead of furnishing further information he sent the brief wire of June 12th above mentioned and the vice-president of the company wired back asking for forms and details which were not forthcoming.

Nathan obviously knew that he had not procured a line of credit on the terms proposed. It is further apparent that the company was not fully advised of the details of the plan upon which the bank would make any loan, and therefore it

cannot be said that it accepted any new or different terms or that such terms were satisfactory to it.

It may well be doubted whether an agreement as alleged in the amended complaint to pay a commission in the event that a broker will "procure the extension of credit" without further specifications of the time, rate of interest, security, balances required, or understanding regarding renewals is sufficiently definite to form the basis of a contract or cause of action unless the terms finally obtained are acceptable to the borrower. In the latter case the agreement is consummated at the time of the acceptance of the terms obtained.

Assuming, however, that the proposition made to Nathan in the present case was sufficiently definite to form the basis of a unilateral contract upon performance by Nathan, the evidence fails to show performance according to the terms proposed and fails to show acceptance by the company of any other terms. Without such performance according to terms or acceptance of new terms, mutuality was entirely lacking and in fact no contract existed. The findings of the trial court to the effect that Nathan did not perform any of the terms or conditions and that no credit was secured under the terms of any contract were supported by the evidence and fatal to his recovery.

It may be further noted that the bank had never made any binding agreement to make a loan to the company on any terms, and in view of the contemplated reorganization of the company at the time that Nathan finally sent the wire in June, 1923, and his failure to forward note and resolution forms as requested, the court was justified in inferring that the bank was not then ready and willing to extend any credit to the company. The fact that under the indefinite allegations the court made findings adverse to plaintiff and appellant on practically all of the remaining allegations is not material. These supported findings were conclusive and under the authorities above cited, no reversal should be had on the ground that some other finding or findings are not supported by the evidence.

■ Counsel further argues that because of the company's financial condition and the impossibility of obtaining credit, Nathan should recover for his services on a *quantum meruit*. This theory of the case seems to have

been first advanced by counsel on this appeal. The case was tried upon the theory that there was an express contract duly performed by Nathan. In his proposed findings which were not signed, he abandoned the common counts of his complaint and asked no findings on the allegations therein contained, nor on the financial condition of the company. No misrepresentation of the financial condition was alleged or proved. On the contrary, statements showing the condition of the company were forwarded to Nathan upon his request shortly after his conversation with Werner, the correctness of which statements is not questioned. At all times involved here, it was admittedly in need of credit to finance its business. It was many months after the conversations with Werner that Nathan secured the unsatisfactory action of the committee of the Irving National Bank, and it was about this time that the reorganization was being contemplated. Counsel has at all times taken the position that Nathan could and did obtain credit for the company under the terms of an agreement and cannot at this stage of the proceedings turn about and say that this was impossible and that he therefore should recover on a *quantum meruit*.

On the appeal of the intervener and appellant Louis E. Goodman, it is claimed that his motion to dismiss the action should have been granted on the ground that prior to the commencement of this action the defendant corporation was defunct, having forfeited its charter for nonpayment of taxes. Counsel on both sides argue at length concerning the provisions of section 416 of the Code of Civil Procedure relating to the manner of suing corporations whose charters have been forfeited and whose directors have become the trustees. The argument of counsel leads to the conclusion that they have overlooked the provisions of Statutes of 1917, pages 371, 377, and section 3669 (c), subdivision 2, of the Political Code. The penalty for nonpayment of taxes was thereby changed so that a domestic corporation no longer forfeits its charter and becomes defunct, but its corporate rights, privileges, and powers are merely suspended, the statute, however, expressly reserving to the corporation the power to defend any action brought against it. "Under the former law, when the charter was forfeited, the directors then in office became

the trustees of the creditors and of the stockholders of the corporation. Under the present law, however, the charter is not forfeited, the corporation does not become defunct and there are no trustees." (*Usher* v. *Henkel*, 205 Cal. 413 [271 Pac. 494].) Although delinquent in payment of taxes, the defendant corporation was properly made a defendant in this action and had the power to defend as provided by statute. The motion of the intervener as a stockholder to dismiss the action was properly denied.

The judgment in favor of defendant and respondent American Photoplayer Co. is affirmed and the order denying the motion to dismiss of the intervener and appellant, Louis E. Goodman, is also affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 5, 1929.