[Civ. No. 1541. Fifth Dist. Feb. 15, 1973.]

CHEROKEE VALLEY FARMS, INC.,
Plaintiff, Cross-defendant and Appellant, v.
SUMMERVILLE ELEMENTARY SCHOOL DISTRICT,
Defendant, Cross-complainant and Respondent.

## Counsel

Rushing, Clark & Haight, Ernest Geddes, Albert G. Clark, Jr., and Michael L. Lyions for Plaintiff, Cross-defendant and Appellant.

Stephen Dietrich, Jr., County Counsel, for Defendant, Cross-complainant and Respondent.

## Opinion

**BROWN (G. A.), P. J.**—This is a controversy wherein each of the two parties seeks to quiet title to a small parcel of real property occupied by the respondent, Summerville Elementary School District (referred to as the "School District"). The parcel is surrounded by property owned by Cherokee Valley Farms, Inc., appellant herein (referred to as "Cherokee"). The trial court held that the School District is the owner in fee simple absolute. Cherokee has appealed.

In 1891 Summerville Elementary School District's predecessor, Arastraville School District, built a schoolhouse on the subject property and rebuilt it in 1893. In 1965 Arastraville School District lapsed and its territory was annexed to the Summerville Elementary School District, respondent herein. Based upon substantial evidence, the court found that a public school was maintained and operated continuously on the property through the 1964-1965 school year and that since that time it has been used for school purposes and has not been abandoned. The property

had been occupied and used as a school or for school purposes for a period of approximately 79 years as of the date of the trial, June 1, 1970, and as of the date of the filing of the complaint, June 3, 1969, for a period of approximately 78 years.

In 1891 one Robert Marshall owned the property which is the subject of this dispute and also the surrounding property now owned by Cherokee. There is no deed, contract or other writing between Marshall and the School District's predecessor describing the arrangements under which it was permitted to occupy the property. Neither is there any oral evidence bearing upon the subject.

In 1912, approximately 21 years after the first occupation of the property by the School District's predecessor, Robert Marshall conveyed a large parcel of real property, including the property occupied by the School District, to Cherokee's predecessor in interest, Tuolumne Fruit Land Company. That deed recites in part: "This conveyance is executed subject to the right of the Arastraville School District to maintain upon said land the public school house now erected thereon. . . ." Similar language was contained in subsequent deeds in the chain of title, including the conveyance to Cherokee in 1955.

In 1956 Cherokee filed an official map with the county recorder, which map delineated the land and designated it as "Arastraville School." Lots were sold with reference to the map.

The trial court filed findings of fact and conclusions of law which in pertinent part state:

"1. In 1891 the Arastraville School District acquired a fee simple determinable interest in the subject property.

"2. That prior to the lapsation of the Arastraville School District in 1965, the condition upon which the Arastraville School District had acquired a fee interest in the property, that of maintaining 'upon said land the public school house now erected thereon,' had been satisfied by the continuous use of the building and property for school purposes for over 70 years, and, having been satisfied, was of no further force and effect.

". . . . . . . . . . . . . . . . . . .

"6. The Summerville Elementary School District is presently the owner of the subject property in fee simple absolute."

Since there is no deed in evidence from Robert Marshall to the School District's predecessor in 1891, nor any oral evidence germane to the

transfer, we must examine the factual and legal basis, if any, for the trial court's conclusion that a fee interest was acquired by the school district in 1891.

It is well to keep in mind the inherent difficulties confronting the courts when resolving questions of title to real property which depend upon ancient transactions, that are not evidenced by written documents, and no one is alive who has personal knowledge of the dealings between the original parties. ■ As this court said in *Devereaux* v. *Frazier Mountain Park etc. Co.* (1967) 248 Cal.App.2d 323, at pages 335-336 [56 Cal.Rptr. 345]: "Cases of this character, in which all persons having knowledge of the transaction surrounding a conveyance are dead and all of the grantor's records are lost or destroyed, present grave difficulties to the trial court and equally vexing problems to a reviewing court because the determination rests so largely upon secondary evidence and inference. However, the motivating principle in both trial and appellate courts is expressed by the Supreme Court in *Mercantile Trust Co.* v. *All Persons,* 183 Cal. 369, at page 381 [191 P. 691], as follows: 'Upon this whole subject we would say that in dealing with old instruments and muniments of title, the parties and witnesses to which are dead, and as to whose execution or the circumstances under which they were executed, or as to whose exact contents in case they or the original record of them is lost, certain and positive evidence is not possible, the same exactitude and certainty of proof cannot be required as is properly required in a case of more recent events. The courts must go upon probabilities and presumptions. To do otherwise would be to destroy valid titles, not to sustain them.' "

The theory of a common law dedication is one of the theories upon which the School District relied in the trial court. That court stated in the quoted findings and conclusions that the title was "acquired." It did not say that the School District was granted the title. The word "acquire" simply means "to get or come to have as one's own." (Webster's New World Dict. (2d Coll. ed. 1972).) "Acquired" could include gaining title by dedication. The judgment is readily supportable within the ambiance of that concept.

■ A common law dedication does not require a writing, nor must the formalities of any statute, such as the statute of frauds, be satisfied. All that is necessary is sufficient evidence that the property owner either expressly or impliedly manifested an unequivocal intention to offer the property for a public purpose and that there was an acceptance of the

offer by the public. (*Cal. Water & Tel. Co.* v. *Public Util. Com.* (1959) 51 Cal.2d 478, 494 [334 P.2d 887]; *Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235 [267 P.2d 10].) In each instance the question of whether there has been a dedication is a question of fact (*Henry Cowell Lime & Cement Co.* v. *State* (1941) 18 Cal.2d 169, 173 [114 P.2d 331]; *Flavio* v. *McKenzie* (1963) 218 Cal.App.2d 549, 552 [32 Cal.Rptr. 535]), and that intent may be demonstrated in any conceivable way that a person's intention can be shown (*Tischauser* v. *City of Newport Beach* (1964) 225 Cal.App.2d 138, 144 [37 Cal.Rptr. 141]). Oftentimes a common law dedication has elements of an estoppel against the property owner in favor of the public arising out of the owner's failure to object to acts or events which indicate his implied intent to dedicate his property. (*Sussman* v. *San Luis Obispo County* (1899) 126 Cal. 536 [59 P. 24]; *Schmitt* v. *San Francisco* (1893) 100 Cal. 302 [34 P. 961].)

■ The intention to dedicate need not be evidenced by express words or documents; it can be manifested by the acts or conduct of the property owner, including his knowing acquiescence in the long and open public use of the property, from which conduct or acquiescence the court can presume that he intended to offer his property for dedication. (*Union Transp. Co.* v. *Sacramento County, supra,* 42 Cal.2d 235, 240-241; *Diamond Match Co.* v. *Savercool* (1933) 218 Cal. 665 [24 P.2d 783]; *Walter G. Brix, Inc.* v. *Brown* (1956) 145 Cal.App.2d 177 [302 P.2d 74]; *Laguna Beach* v. *Consolidated Mtg. Co.* (1945) 68 Cal.App.2d 38, 42-44 [155 P.2d 844].)

■ An implied in fact dedication is to be distinguished from a dedication implied in law. In the latter case, title is acquired by prescription, all of the elements necessary to the acquisition of title by adverse possession having been satisfied. (*Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50]; *Arnold* v. *City of San Diego* (1953) 120 Cal.App.2d 353 [261 P.2d 33].) In this case we are concerned with a dedication implied in fact.

■ In the case at bench there has been a continuous, open and uninterrupted occupancy and use of the premises, acquiesced in by the grantor and his successors, for some 78 years—an extraordinary period. In addition, the School District invested a substantial amount of public funds to build in 1891 and rebuild in 1893 a permanent structure upon the premises, which, so far as appears, remains on the property.

The recordation of an official map in 1956 by Cherokee and the sale of lots with reference to it is some evidence of recognition by Cherokee of the School District's claim of an interest in the property.

Buttressed by the foregoing authorities, the conclusion is inescapable that the facts furnish substantial evidence to support the trial court's finding that the School District's predecessor acquired an interest in 1891 by implied dedication. That finding is binding on this court on appeal. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480].)

The conclusion of the trial court that the interest acquired was a fee interest is supported by rational inference and by legal principle. It would scarcely be reasonable to assume the School District would have invested substantial sums of public funds to build and rebuild the structure thereon without the assurance of an interest more durable than an easement or a license. It is reasonable to infer that such an investment of taxpayers' money would not have been made unless the School District owned the property upon which the improvement was built.

Moreover, if the school property had been acquired by eminent domain, the School District would have received an interest in fee. (Code Civ. Proc., §§ 1238, subd. 2, 1239, subd. 1.) Normally the dedication of property for the construction of school buildings vests in the public entity the same interest as though the property had been acquired by condemnation. (*Friesen* v. *City of Glendale* (1930) 209 Cal. 524, 530 [288 P. 1080]; *Washington etc. Co.* v. *Los Angeles* (1940) 38 Cal.App.2d 135, 138 [100 P.2d 828].)

Cherokee contends, however, that the language in the 1912 deed from Robert Marshall to Cherokee's predecessor in interest conclusively demonstrates that the interest created was a license or, at most, an easement. We disagree. The language is: "This conveyance is executed subject to the right of the Arastraville School District to maintain upon said land the public school house now erected thereon."

Since there was no extrinsic evidence introduced in the court below bearing on the meaning of the quoted language, the construction of that language presents a question of law and we are not bound by the trial court's interpretation of it. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].)

The trial court quite properly did not treat this language as creating an interest but as evidence of what interest had been created in 1891. First, it is to be noted that this self-serving language of the grantor, to which the School District was not a party, was in an instrument executed more than 21 years after the initial dedication and, as of 1912, could not have legally created an interest by reservation in the School District's prede-

cessor, an entity not a party to the grant between Robert Marshall and Cherokee's predecessor in interest. (*Willard* v. *First Church of Christ, Scientist* (1972) 7 Cal.3d 473, 476, 479 [102 Cal.Rptr. 739, 498 P.2d 987].)

Furthermore, the language does not purport to "create" an interest. A reservation is "a clause in a deed or other instrument of conveyance by which the grantor creates . . . some right, interest, or profit in the estate granted, which had no previous existence as such, but is first called into being by the instrument reserving it; . . ." (Black's Law Dict. (4th ed. 1968); 15 Cal.Jur.2d, Deeds, § 182, pp. 588-589.)

In our view, the instrument and language used is evidence of what interest the School District's predecessor acquired in 1891. It is nothing more than a recognition by the original grantor of the "right of the Arastraville School District to maintain upon said land the public school house now erected thereon" pursuant to the fee interest that had been created in the School District some 21 years before. In the context of this case, we perceive no other evidentiary force that can reasonably be accorded to this writing.

Assuming, however, as appellant argues, the language used is more consonant with a license or an easement than it is with the creation of a fee interest, this circumstance merely creates an evidentiary conflict on the issue which was resolved by the trial court against the appellant. (*Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920; *Estate of Gilliland* (1971) 5 Cal.3d 56, 60 [95 Cal.Rptr. 343, 485 P.2d 543].)

The trial court found the fee interest acquired by the School District in 1891 was "a fee simple determinable interest." From the "Memorandum of Court's Decision," it is apparent that in finding a fee simple determinable interest the court relied upon language in the 1912 deed from Robert Marshall to Cherokee's predecessor in interest as evidence of what was intended in 1891. We, therefore, must examine the problems of (1) whether a fee simple determinable interest can be acquired by dedication, and (2) assuming it can be, whether the evidence is sufficient to support a finding of a fee simple determinable or other defeasible fee.

Undoubtedly a defeasible fee simple can be acquired by dedication if the express language in the conveyance or other evidence makes clear that such a limitation on the fee is intended. (*Gion* v. *City of Santa Cruz, supra,* 2 Cal.3d 29, 45, fn. 3; *Slavich* v. *Hamilton* (1927) 201 Cal. 299, 303 [257 P. 60]; *McDougall* v. *Palo Alto etc. School Dist.* (1963) 212

Cal.App.2d 422, 431-435 [28 Cal.Rptr. 37]; *Savanna School Dist.* v. *McLeod* (1955) 137 Cal.App.2d 491 [290 P.2d 593]; *Hasman* v. *Union High School* (1926) 76 Cal.App. 629 [245 P. 464]; 2 Miller & Starr, Current Law of Cal. Real Estate (1968) § 449, p. 643; Derby, *Dedication of Land in California* (1965) 53 Cal.L.Rev. 559, 565-569.) However, such a limitation upon the grant of a fee simple is not favored in the law and no language will be so interpreted if the provision will bear other reasonable construction, and " '. . . There must be language used which is so clear as to leave no doubt that the grantor intended that [such an estate] should be created—language which *ex proprio vigore* imports such a condition.' " (*Gramer* v. *City of Sacramento* (1935) 2 Cal.2d 432, 438 [41 P.2d 543].)

Understandably, we have found no case wherein a fee estate other than a fee simple absolute has been created by an implied in fact dedication. The reason is apparent since the estate is usually implied from acts and conduct rather than express language. It would be difficult, if not impossible, to conceive of a circumstance wherein the technical language required for the creation of such a defeasible interest could be implied from acts and conduct. ▆▆▆ In concluding the interest acquired was defeasible, the trial judge purported to rely upon the express language of the deed of 1912 from Robert Marshall to Cherokee's predecessor in interest. We have concluded that the trial judge erred in this respect.

For the reasons hereinabove stated, as of 1912 the instrument could not legally have created an interest in a third party by reservation and it does not purport to "create" an interest. Considered in proper posture as evidence of what interest was created in 1891, as a matter of law, the language used is insufficient to create a defeasible interest, whether it be denominated a fee simple determinable or a fee subject to a condition subsequent.

It is unnecessary to undertake an extended discussion of the distinction between a fee simple determinable and a fee simple subject to a condition subsequent. (See *McDougall* v. *Palo Alto etc. School Dist.* (1963) 212 Cal.App.2d 422, 431-435 [28 Cal.Rptr. 37].) Suffice it to say that the words used in the instrument here under consideration are insufficient to accomplish the creation of either of such defeasible interests. While no particular words are required to create a fee simple determinable, it is necessary that language be used which shows that the estate will automatically expire on the occurrence of a certain event. (*McDougall* v. *Palo Alto etc. School Dist., supra,* 212 Cal.App.2d at pp. 431-433.) No such

words are used in the instant instrument. █   In a fee simple subject to a condition subsequent, the words used must show that upon the occurrence of a stated event the grantor shall have the power to terminate the estate created. (*McDougall* v. *Palo Alto etc. School Dist., supra,* 212 Cal.App.2d at pp. 434-435.) There is a total absence of such words here.

The decree quieting title in the School District as owner in fee simple absolute is clearly correct. It is supported by the evidence and by the findings of fact. The determination, however, in the findings of fact and conclusions of law that the fee acquired in 1891 was "determinable" is erroneous. For the reasons hereinabove stated, the evidence does not support that finding of fact if it is considered to be such. If it is considered to be a conclusion of law, the findings of fact do not support the conclusion that the interest acquired was determinable.

The cause need not be reversed. (Code Civ. Proc., § § 909, 43; *American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 219 [246 P.2d 935].) It is proper for this court to order expunged the finding and conclusion that the fee acquired was determinable, particularly where the facts found adequately support the judgment that the fee acquired was not encumbered by any limitation or defeasible condition. (*Shimpones* v. *Stickney* (1934) 219 Cal. 637, 655 [28 P.2d 673]; *Swycaffer* v. *Swycaffer* (1955) 44 Cal.2d 689, 692 [285 P.2d 1]; *American National Bank* v. *Donnellan* (1915) 170 Cal. 9, 15-17 [148 P. 188]; *Nathan* v. *American Photoplayer Co.* (1928) 95 Cal.App. 320, 321-322 [272 P. 775].)

The word "determinable" appearing in paragraph 1 of the conclusions of law of the trial court's findings of fact and conclusions of law is stricken; paragraph 2 of the conclusions of law of that document may be disregarded as surplusage. (*People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 65 [21 Cal.Rptr. 875].)

The judgment is affirmed

Gargano, J., and Franson, J., concurred.