[Civ. No. 403.    Third Appellate District.—January 11, 1908.]

L. A. RICHARDS, Appellant, v. FARMERS' AND MERCHANTS' BANK, P. B. FRASER, D. S. ROSENBAUM, and D. A. GUERNSEY, Respondents.

PLEADING—GENERAL DEMURRER TO COMPLAINT—MATERIAL FACTS ADMITTED.—Upon general demurrer to a complaint, all material facts therein averred are admitted to be true, for the purposes of the demurrer.

ID.—COMPLAINT TO RESCIND SETTLEMENT AND RELEASE OF PARTNERSHIP—FRAUD—MONEY PAID—GREATER SUM DUE—OFFER TO RESTORE NOT REQUIRED.—A complaint, in an action to rescind the settlement and release of a partnership for money paid by the defendants to the plaintiff, which sets forth facts constituting fraud in the procurement of the settlement and release, and avers that upon a full accounting and settlement of the partnership a greater sum would be found due than that paid, need not, as against a general demurrer, allege an offer to restore the money paid.

ID.—RESTRICTION UPON RESCISSION—RULE AND EXCEPTIONS.—The general rule that, in order to support rescission of a contract for fraud, the plaintiff must restore or offer to restore the consideration received, before suit, is subject to exceptions. The plaintiff is not required to restore or offer to restore a sum which he is, in any event, entitled to retain, or where the thing has no value, or where it appears that defendants could not be injuriously affected by failure to make restitution, or where the complications are such, without the plaintiff's fault, that restitution is impracticable, and the court, upon final decree, may fully adjust the equities between the parties.

ID.—LIMITATION AND LACHES NOT SHOWN ON FACE OF COMPLAINT.— Where the complaint alleges that the facts constituting the alleged

fraud were discovered within one year before the filing of the complaint, it does not show limitation or laches upon its face, it appearing upon the face of the complaint that no restitution was required, and that no harm could result to the defendant by the delay to sue, under the allegations of the complaint.

ID.—SUFFICIENCY OF COMPLAINT—ERROR IN SUSTAINING DEMURRER.—
*Held,* that the complaint in the action to rescind states a cause of action and is not demurrable for ambiguity, and that a general and special demurrer to the complaint was improperly sustained.

APPEAL from a judgment of the Superior Court of San Joaquin County. F. H. Smith, Judge.

The facts are stated in the opinion of the court.

Wm. Hoff Cook, and S. A. D. Gray, for Appellant.

Nicol & Orr, Budd & Thompson, and Pillsbury, Madison & Sutro, for Respondents.

HART, J.—A demurrer to the second amended complaint having been sustained, with leave to amend, and plaintiff refusing to amend within the time allowed him by the court, judgment was entered against him. This appeal is from said judgment.

The suit was commenced for the purpose of obtaining a decree of the court rescinding and setting aside two certain instruments, releasing defendants of all certain claims growing out of the affairs of an alleged partnership made by plaintiff against them, and acknowledging satisfaction of said claims, to recover which two suits were previously instituted by the plaintiff against the defendants and pending at the time of the execution of said releases—one in San Joaquin county and the other in Contra Costa county—and for an accounting of the affairs of said partnership.

The plaintiff and the defendants Guernsey, Fraser and Rosenbaum, in the month of December, 1891, purchased, as partners, it is alleged, a large tract of land in San Joaquin county known as the "Sargent Tract," comprising about three thousand acres. It is alleged that the purchase price of the land was at the rate of $40 per acre, and that the agreement and understanding was that each of the said alleged partners was to pay an equal proportion, according

to the extent of his interest, of the aggregate sum for the purchase of said land. The complaint charges that the defendants, named as partners, had management of the transaction, and so manipulated it and the payments made by the plaintiff that he, in fact, paid at the rate of more than $75 per acre for his share in the land, while the other partners paid at the rate of $40 per acre for their respective shares.

The defendant bank, it is alleged, was the depositary of the profits of the business of said partnership, and that a conspiracy was entered into between said bank and said other defendants to so manipulate the funds belonging to said partnership, so deposited with said bank, as to defraud plaintiff of his proper share of the same. It is charged that the certain instruments of release and satisfaction referred to were procured from plaintiff by the defendants by means of fraud and deceit on the part of said defendants, for the purpose of defrauding plaintiff, and that plaintiff, having learned of the misrepresentations and fraud thus practiced upon him after executing said instruments, and within one year from the date of the execution of the same, instituted this suit for their rescission and for an accounting.

The complaint alleges that the defendants are indebted to plaintiff in an amount exceeding the sum of $15,000, received by him at the time of the execution of the releases mentioned. The plaintiff does not offer to restore, nor does he in fact restore, the sum so received by him.

The contention of the respondents is, and the court below so held, that the complaint does not state a cause of action for rescission because the plaintiff has not restored, nor offered to restore, to the defendants, said sum of $15,000 paid to him in consideration of the execution of the instruments which it is sought to have rescinded. Upon the solution of this proposition rests the determination of the question of whether the objection to the complaint presented by the general demurrer is tenable.

The court below also held the complaint to be obnoxious to the criticism involved in the special demurrer, that it is ambiguous and uncertain.

The defendants further claim and so charge in their special demurrer that plaintiff's right of action is barred by the statute of limitations and by laches.

The instruments executed by plaintiff acknowledging satisfaction of any claims held or claimed to have been held by him against the defendants read as follows:

"I, L. A. Richards plaintiff in that certain action now pending in the Superior Court of the County of San Joaquin, State of California, wherein D. A. Guernsey, P. B. Fraser and D. S. Rosenbaum are defendants, and plaintiff also in that certain action now pending in the Superior Court of Contra Costa County, State of California, wherein Farmers and Merchants Bank of Stockton, P. B. Fraser and D. S. Rosenbaum are defendants, do hereby declare that I have examined all accounts and transactions at any time heretofore had, kept and taken by said defendants and by each of them respecting, relating to or in anywise concerning any matter or business in which I was or now am in any manner or at all interested, and upon and after such examination I am satisfied with the accounts kept by said defendants and by any of them. I have examined, in company with my attorneys, C. H. Fairall and Grove L. Johnson, all of the books and papers of Farmers and Merchants Bank of Stockton, California, relating to, appertaining and concerning any and all of my transactions with said Bank as a depositor and from such examination I find that all moneys by me deposited or placed with said Bank were duly and properly and upon checks credited to my account and that the same were duly, properly and upon checks drawn by me paid out by said Bank and that I have not now and had not had since March 21, 1894, any money in said Bank belonging to me. I further declare that I have examined the books, papers and accounts of P. B. Fraser and D. S. Rosenbaum, in company with my said attorneys, and therefrom I learn that the sum of $40,-000.00, mentioned in my complaint in the said action now pending in the Superior Court of Contra Costa County was by them properly expended and disbursed in accordance with my directions given to them and that upon the 29th day of September, 1890, the balance of said sum remaining after the payment of the amounts due from me to the San Joaquin Valley Bank, and upon notes owing then by me to said P. B. Fraser and D. S. Rosenbaum and for the costs of abstracts made for me, was by me received from said Fraser and Rosenbaum and then deposited by me in said Farmers and Merchants Bank, and that there has not been since the 29th day

of September, 1890, and is not now, any sum of money whatever due or owing or unpaid to me by said Fraser or Rosenbaum for or on account of the transactions mentioned and set out in my said complaint in said action now pending in said Contra Costa County and in consideration of the foregoing I hereby acknowledge satisfaction in full of any and all claims and demands that I now have or might have or could make against said Farmers and Merchants Bank, P. B. Fraser, D. S. Rosenbaum and D. A. Guernsey or against any or either of them.

"Witness my hand this 16th day of December, 1902.

"L. A. RICHARDS.

"Witness: C. H. FAIRALL.
"F. D. NICOL.
"GROVE L. JOHNSON.
"ED. R. THOMPSON."

"For and in consideration of the sum of Fifteen Thousand Dollars, to me in hand paid by D. S. Rosenbaum, P. B. Fraser and D. A. Guernsey, the receipt of which is hereby acknowledged, I, L. A. Richards, hereby release and acquit said P. B. Fraser, D. S. Rosenbaum and D. A. Guernsey, and the Farmers and Merchants Bank of Stockton, California, of and from any and all claims and demands of every kind, name and nature, which I now have or might or could make against the said named parties, or any or either of them; and I hereby acknowledge satisfaction in full of all actions and causes of action, either in law or in equity, which I now have or now maintain, or which I might now have or might now maintain, as against the said named parties and as against each and every one of them. In witness whereof I have hereunto set my hand and seal this 15th day of December, 1902.

" (Seal)                          L. A. RICHARDS.

"Witness: F. D. NICOL."

The complaint charges that the foregoing instruments were signed and delivered by the plaintiff to the defendants, "through the false representations of the defendants, made by them with the purpose of cheating and defrauding plaintiff, and at their urgent solicitation and request." The complaint further avers that after executing said instruments plaintiff received information that at the time he so signed and delivered the same to the defendants the latter had not

shown to him or to his attorneys "all of their books of account, books, papers or accounts as herein recited"; and "that the books, books of account, accounts and papers then exhibited to him and his said attorneys, as therein recited, were not true and correct, but were false and fictitious, as the defendants then and there well knew, but of which fact plaintiff was then ignorant, and that plaintiff thereupon engaged an expert accountant to examine the papers, books of account, books and papers of the defendants"; that upon information received from said expert accountant, and from information obtained through certain depositions of the defendants, Fraser, Rosenbaum and Guernsey, taken in a certain action pending in the superior court of San Joaquin county, wherein this plaintiff was plaintiff and the defendants herein were defendants, the plaintiff charges that "the defendant corporation and the other defendants did not keep true and correct books of account of the transactions and business between the plaintiff and the defendants in relation to the matters hereinbefore alleged"; that "the defendants did not exhibit to the plaintiff all of their accounts, books or papers, or true and correct books of account, or accounts or papers, as recited in the aforesaid instruments." The true and correct books of account, etc., it is alleged, if they had been exhibited to plaintiff and his attorneys at the time the said instruments were executed, would have shown the recitals therein to be untrue. It is further alleged: "That in obtaining said instruments from plaintiff the defendant corporation parted with no valuable consideration, or other consideration, and that at the time of the execution and delivery of said instruments the said sum of $15,000 therein recited was due, owing and unpaid to plaintiff, and the defendants were then and there indebted to plaintiff in the sum of $15,000, in addition to the sums and amounts set forth in paragraph VI of this complaint."

After alleging that the plaintiff was induced to sign said instruments through misrepresentations and "a designed suppression of the truth" on the part of the defendants, the complaint avers that the recitals contained in said instruments do not state the truth; that there are certain large amounts, representing the profits of the alleged partnership, which were never accounted for by the defendants, and that plaintiff, through the alleged fraud perpetrated by the defendants,

was deprived of his just proportion thereof, and he, therefore, asks for an accounting.

For the purposes of the case, the demurrer admits the allegations of the complaint to be true, and for the purposes of this decision, therefore, the facts as alleged and so admitted to be true must constitute the sole guide by which we must be governed in the determination of the propositions of law presented and necessary to be decided.

The general rule as to rescission is, that where a party desires to rescind, upon the ground of fraud, an executed contract by which he has received from the other party thereto something of value, he must, before he is entitled to such relief, either restore, or offer to restore, to said other party whatever of value he has so received. In other words, the party seeking rescission must, as to the subject matter or consideration of the contract sought to be rescinded, place the other party to such contract in *statu quo,* or offer to do so, before he would be entitled to a rescission of the contract. This has always been the general rule as to rescission practiced in courts of equity and is the express rule in California. (Civ. Code, sec. 1691; see, also, *Matteson* v. *Wagoner,* 147 Cal. 744, [82 Pac. 436] ; *Richards* v. *Fraser,* 122 Cal. 457, [55 Pac. 246] ; *Kelley* v. *Owens,* 120 Cal. 502, [47 Pac. 369, 52 Pac. 797] ; *Rohrbacher* v. *Kleebauer,* 119 Cal. 260, [51 Pac. 34] ; *Jurgens* v. *New York Life Ins. Co.,* 114 Cal. 161 et seq., [45 Pac. 1054, 46 Pac. 386] ; *Maddock* v. *Russell,* 109 Cal. 417, [42 Pac. 139] ; *Bank* v. *Wickersham,* 99 Cal. 655, [34 Pac. 444] ; *Martin* v. *Burns Wine Co.,* 99 Cal. 355, [33 Pac. 1107] ; *Gamble* v. *Tripp,* 99 Cal. 223, [33 Pac. 851] ; *California Farm & Fruit Co.* v. *Schiappa-Pietra,* 151 Cal. 732, [91 Pac. 593].)

There are however exceptions to this general rule. (See cases cited.) Among these exceptions is where ''one who attempts to rescind a transaction on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain.'' (*Richards* v. *Fraser,* 122 Cal. 457, [55 Pac. 246].) Or, ''for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by

a failure to restore; or where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties." (*Kelley* v. *Owens,* 120 Cal. 502, [47 Pac. 369, 52 Pac. 797].)

The question here is, Was it the duty of the plaintiff, under the facts as pleaded and which, as seen, must, for the purposes of this decision, be deemed to be true, to restore or offer in good faith to restore the sum of $15,000, received by him from the defendants at the time of the execution of the instruments of release and satisfaction, as a condition precedent to his right to a rescission of the transaction evidenced by said instruments?

If, under the pleaded facts, the plaintiff is, in any event, entitled to retain the money so received by him, then the transaction is within one of the exceptions referred to in the authorities cited, and restoration or offer to restore is consequently unnecessary, and it would, therefore, follow that the order sustaining the demurrer upon the general ground is erroneous.

The learned judge of the court below, who filed an opinion setting forth his reasons for sustaining the general demurrer, and which is printed in respondents' brief, concedes the soundness of the position as thus stated, for he says: "If the $15,000 was paid as and for an adjustment of the accounts, or as the balance due to plaintiff upon a settlement of the accounts or as the amount agreed by all parties to be due, then plaintiff is entitled to retain the same whether such amount was arrived at by means of false and fraudulent accounts which concealed the true balance, or from an adjustment of true and correct accounts." But the learned judge does not so interpret the instruments, but declares that "it appears that the $15,000 was paid for the express purpose of preventing and estopping the plaintiff from prosecuting other and future actions against the defendants, or either or any of them, and that he now asks to be allowed to prosecute the very claims which he agreed not to prosecute, and at the same time retain the consideration for the agreement not to prosecute," and from this construction of the nature and intention of the instruments, concludes that plaintiff must first, before he can prosecute his original cause

of action, ''restore the consideration for which he agreed not
to do so.''

We are, in view of the allegations of the complaint, and
the theory upon which the suit necessarily proceeds, unable
to assent to the interpretation of the instruments thus given
them by the trial court.   There can be no doubt that the in-
struments involve an agreement not to prosecute any cause
of action then pending between the parties at the instiga-
tion of plaintiff, and also that the plaintiff would not press
any further claims he might have against the defendants.
But these instruments, as we understand them from the
averments of the complaint and the fair and reasonable in-
tendments thereof, simply mean, and were intended to mean,
that a settlement of the differences between the parties had
been reached and that the sum of $15,000, paid by the de-
fendants to plaintiff, was, under all the facts then known to
plaintiff, a just and equitable basis of such settlement.   In
other words, we do not understand that the releases were in-
tended by the parties—the plaintiff on the one side and the
defendants on the other—for the purpose of merely evidenc-
ing the ''buying of peace'' by the defendants, without
regard to whether the sum received by plaintiff was in fact
due him or not, but as a settlement of the accounts between
the parties, and, the facts being admitted by the demurrer,
the settlement must be construed to mean an admission upon
the part of the defendants Fraser, Rosenbaum and Guernsey,
that at the time of such settlement there was at least that
much due plaintiff as his share of the profits of the business
in which, as partners, the parties had been engaged.   There
is no express language in the releases authorizing or war-
ranting any other construction of the transaction evidenced
thereby than that given here.   We think that where a plead-
ed instrument is, because of the uncertainty of the language
in which it is expressed, susceptible of more than one con-
struction as to its nature or as to the purpose intended by
the parties to be attained by it, the construction of the party
pleading it should be accepted, if such construction be
reasonable, where, as here, the essential facts stated in the
complaint are, at least *pro re nata,* admitted to be true.

The complaint alleges that the instruments releasing the
defendants of all claims or debts and causes of action inur-
ing to the plaintiff by reason of the partnership affairs of the

parties were obtained through the fraudulent representations and the designed suppression of the truth by the defendants; that true and correct accounts of the transactions of the alleged partnership were not exhibited to the plaintiff when the instruments were executed; that he was thus fraudulently misled and deceived by the defendants for the purpose of cheating him, and that facts learned subsequently to the execution of the instruments convinced him that the settlement was not a just and honest one, and that there is still due him a large sum of money in excess of that received by him at the time of the execution of the releases. The theory reasonably arising upon the facts thus pleaded and contended for by plaintiff is that the sum accepted by him as a true adjustment of the partnership profits does not represent the amount justly due him, and that he is, therefore, and by reason of the alleged imposition practiced upon him, entitled to an accounting in order that a true and just settlement may be obtained. This is, we say, the theory which necessarily arises upon the facts pleaded in the complaint, and as such must be accepted as the correct theory under the attack of the demurrer.

It will not be doubted that if the facts alleged in the complaint are absolutely true, the defendants Fraser, Rosenbaum and Guernsey still retain certain profits of the partnership business belonging to the plaintiff. The complaint, as we have seen, declares that there is, in addition to the $15,000 received by plaintiff on account of the partnership profits, a large sum on the same account still due. Why, then, should the law require so idle an act as to compel plaintiff to restore that which the demurrer necessarily admits would be his in any event? We are not concerned with the proposition of what the evidence might show upon a trial of the facts. We are, in the determination of the question here, restricted alone to a consideration of the uncontroverted facts pleaded in the complaint, and taking those facts and the theory reasonably and naturally arising upon them, as our guide, as we are compelled to do, we are in no doubt, from the light thus reflected, but that the transaction represented by the said instruments of release and satisfaction is within the exceptions to the general rule as to rescission to which we have referred, and that the general demurrer, therefore, should have been overruled.

We think the objection to the complaint upon the ground of ambiguity and uncertainty is not sufficiently well founded to justify the order sustaining the special demurrer. The allegations could and no doubt should have been more certain, but we see no difficulty in determining from them the meaning of the pleader. All the defendants including the defendant corporation, are clearly enough charged in paragraph 4 of the complaint with a conspiracy to defraud the plaintiff, and in paragraphs 5 and 6, where the defendants Fraser, Rosenbaum and Guernsey are sometimes referred to as "the defendants," the reference in the same connection to the bank as the "defendant corporation " makes the allegations sufficiently clear to enable the defendants to know and understand who are and what is meant. The special demurrer should have been overruled.

The complaint does not show that the action is barred by the provisions of section 338 of the Code of Civil Procedure, as it is alleged that the false and fraudulent representations upon which plaintiff claims to have executed the instruments and thereby consummated a settlement with the defendants were discovered within one year of the filing of the complaint.

Nor do we think plaintiff is guilty of delay amounting to inexcusable laches in bringing his suit, even if it may be conceded that, under the rule that the allegations of a pleading are to be construed most strongly against the pleader, the averments as to the time of the discovery of the alleged fraud may be taken as indicating that almost a year had passed after the discovery of the fraud before plaintiff filed his complaint. There is no fixed or invariable rule as to what will constitute laches under section 1691 of the Civil Code. Whether laches may or may not be successfully pleaded against the right to proceed in a suit must depend upon the circumstances of each particular case. In those cases where the thing received by him who seeks to rescind an executed contract on the ground of fraud is of such a nature as that it may deteriorate in value, and the circumstances are such as that restoration is a necessary prerequisite to the relief, a few months' or even weeks,' delay after the discovery of the fraud may be deemed inexcusable laches and lose the party his right of action. But in the case at bar there was no necessity for restoring the thing

received, and no harm could therefore possibly result to the defendants by the delay, even if it embraced a period of nearly a year. The plaintiff took timely steps so far as the statute of limitations was concerned, and the rule as to laches which formerly was under the old practice and is perhaps sometimes now invoked by courts of equity in analogy to the statutory limitations as to the time within which actions may be brought in courts of law—to discourage the assertion of stale claims (*vigilantibus non dormientibus aequitas subvenit*)—does not, of course, involve the laches contemplated by section 1691 of the Civil Code. It may be that, upon a trial of the issues of fact, the evidence will establish circumstances showing such laches upon the part of plaintiff in bringing his suit as to defeat his right of action, and if so, and it is made an issue by the answer, a finding thereon, supported by sufficient proof, would sustain a judgment against plaintiff. But, as before suggested, we are not now dealing with questions of fact.

We think the judgment ought to be reversed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 10, 1908.