[Civ. No. 19900. Third Dist. May 28, 1982.]

MARJORIE ANNE JOHNSON SPRINGMEYER, Plaintiff and Appellant, v.
CITY OF SOUTH LAKE TAHOE, Defendant and Respondent.

COUNSEL

Sharryl E. Fowler and Garrett H. Elmore for Plaintiff and Appellant.

J. Dennis Crabb, City Attorney, for Defendant and Respondent.

OPINION

BLEASE, J.—Plaintiff Marjorie Anne Johnson Springmeyer appeals from a judgment of dismissal of her quiet title action involving property deeded to the City of South Lake Tahoe (city). She contends she is the owner in fee simple of a one-third interest in the property by virtue of an automatic reversion provision in the deed. We read the deed to avoid a reversion. We affirm the judgment.

## FACTS

The complaint alleges that in June of 1967 Springmeyer (by a trustee) and two siblings granted 5.819 acres of land in El Dorado County to the city.[1] The *habendum* clause in the deed declares that the land is to

---

[1] The deed provides: "KNOX VAN DYKE JOHNSON, WILLIAM VAN DYKE JOHNSON, and MORRIS LOWENTHAL as Trustee for MARJORIE ANNE JOHNSON

be used for "government office purposes." Two conditions of reversion are declared. First, if the city fails to build and occupy one or more office buildings for city office purposes, by specified date, the property is automatically to revert to the grantors. Second, if subsequent to compliance with that condition, the real property ceases to be used for "government office purposes," an automatic reversion is to occur.

In September of 1972 and July of 1979 the city allowed buildings and other structures to be built upon the property for use by the County of El Dorado. On July 23, 1979, plaintiff commenced this action alleging that the reversion conditions required defendant "to utilize [the] property *solely* for municipal government purposes." The demurrer was granted for failure to state a cause of action. The court said that "government office purposes" encompasses "*any* government office, state, county, or city," and therefore the county uses objected to by plaintiff." Plaintiff appealed from the resulting judgment.

SPRINGMEYER, hereby grant for the purposes and upon the conditions hereinafter stated, to the CITY OF SOUTH LAKE TAHOE, a municipal corporation, the real property in the County of El Dorado, State of California, described in Exhibit 'A' attached hereto and incorporated herein by reference.

"Subject to all existing easements.

"TO HAVE AND TO HOLD said real property for government office purposes.

"By accepting delivery of this grant, Grantee covenants and agrees as follows:

"(1) On or before June 30, 1972, Grantee will construct or will cause to be constructed on the hereinabove described real property, one or more office buildings which shall contain office space for the use and occupancy of various basic municipal government departments, services and offices, including by way of example and without limitation, grantee's Building, Planning, and Recreation Departments and City Manager; but expressly excluding use of all or any part of the above-described real property for corporate yard purposes.

"(2) On or before completion of the construction of said buildings, Grantee will place or cause to be placed upon the above-described real property, in a suitable location thereon, a permanent brass plaque having dimensions of no less than 3 feet by 4 feet which shall commemorate the gift of said real property to the Grantee, in appropriate wording to be approved by the Grantors.

"(3) This deed shall be recorded in the official records of El Dorado County within sixty days after the date hereof.

"If the Grantee does not comply with any of the covenants and agreements hereinabove set forth, then the title to the above-described real property shall automatically revert to the Grantors herein, their heirs, successors and assigns.

"If after the Grantee has complied with all of said covenants and agreements and has constructed or caused to be constructed said office building or buildings upon said real property, said real property at any time ceases to be and is no longer used for government office purposes, then the title to said real property shall automatically revert to the Grantors herein, their heirs, successors and assigns.

"Dated this 25th day of June, 1967."

## DISCUSSION

We are concerned here with the law of remedies. Plaintiff argues that any use of the property not *exclusively* for *city* offices violates the second condition and triggers an automatic reversion of the property to the grantors. We disagree. As we shall show, the test to be applied is whether the *deed* evinces a clear and unmistakable intention to cause a reversion if the property is not used exclusively for city government offices. We conclude that it does not.[2]

### A.

■ Plaintiff contends that a demurrer is an inappropriate procedure by which to test the meaning of "government office purposes" since it precludes her use of extrinsic evidence of the grantors' intentions. She relies upon *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373] and *Connell* v. *Zaid* (1969) 268 Cal.App.2d 788 [74 Cal.Rptr. 371] for support. *Thomas Drayage* holds that "[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.]" (*Id.*, at p. 37.) In *Connell* v. *Zaid* the court applied this principle to the interpretation of a deed. It overruled a demurrer denying an amendment to a complaint, saying: "[W]here 'a pleaded instrument is, because of the uncertainty of the language in which it is expressed, susceptible of more than one construction *as to its nature or as to the purpose intended by the parties to be attained by it*, . . . the construction of the party pleading it should be accepted, if such construction be reasonable' in considering a pleading attacked by general demurrer. (*Richards* v. *Farmers etc. Bank*, 7 Cal.App. 387, 395 [94 P. 393].)" (*Connell* v. *Zaid, supra*, 268 Cal.App.2d at pp. 794-795.)

These authorities, generally applicable to written instruments (*Estate of Dodge* (1971) 6 Cal.3d 311, 318-319 [98 Cal.Rptr. 801, 491 P.2d 385]), do not control. The law views reversion as an anomalous doctrine, an exception to the general aversion to forfeiture. (See generally, Rest., Property, §§ 44-58, pp. 121-199; *id.*, § 46, pp. 153-155; Simes, *Restricting Land Use in California by Rights of Entry and Possibilities*

---

[2]Since we resolve this issue in the city's favor we have no warrant to address the parties' other contentions concerning statute of limitations, failure to join an indispensable party and laches or estoppel.

*of Reverter* (1962) 13 Hastings L.J. 293; Ferrier, *Determinable Fees and Fees Upon Condition* (1936) 24 Cal.L.Rev. 512.) Reversion is a drastic remedy for imposing the grantor's restrictions upon the use of the real property, whether the revocation of title operates automatically, upon the happening of a condition subsequent (a fee simple determinable),[3] or by reentry (a fee simple subject to a condition subsequent). Its all-or-nothing character has an inherent potential for working inequity, since it provides no occasion for comparison of the severity of the remedy with the gravity of the breach.

To minimize the potential for inequity, the law requires clear expression of the grantor's intent. A provision relied upon for reversion must use language that leaves no doubt of an intention to work a forfeiture upon the occurrence of the declared condition. (See, e.g., 2 Miller & Starr, Current Law of Cal. Real Estate (1977) Estates §§ 15:4-15:6, pp. 601-607.) "Such conditions are not favored in law because they tend to destroy estates, and no condition in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction. While no precise form of words is necessary to create a condition subsequent, still it must be created by express terms or by clear implication .... There must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created— language which *ex proprio vigore* imports such a condition. [Citations.]" (*Hawley* v. *Kafitz* (1905) 148 Cal. 393, 394-395 [83 P. 248]; see also *Gramer* v. *City of Sacramento* (1935) 2 Cal.2d 432, 437-438 [41 P.2d 543]; see also *Cherokee Valley Farms, Inc.* v. *Summerville Ele-*

---

[3]Automatic reversion is a troublesome doctrine of dubious value. The authority for it in California law is sparse, with the exception of the special case of exploratory oil and gas leases. (See, e.g., *Dabney* v. *Edwards* (1935) 5 Cal.2d 1 [53 P.2d 962, 103 A.L.R. 822].) That it can lawfully be extended beyond this case is questionable. (See Ferrier, *Determinable Fees and Fees Upon Condition, supra*; Comment, *Oil and Gas: "Overriding Royalties": "Proceeds Interests"* (1938) 26 Cal.L.Rev. 480, 482, fn. 14.) The one square precedent is *McDougall* v. *Palo Alto etc. School Dist.* (1963) 212 Cal.App.2d 422 [28 Cal.Rptr. 37], which allowed such an estate without discussion of the policy issues involved. (Cf. *Parry* v. *Berkeley etc. Foundation* (1937) 10 Cal.2d 422 [74 P.2d 738, 114 A.L.R. 562]; and see Bowman, *Ogden's Revised Cal. Real Property Law* (Cont.Ed.Bar 1974) § 2.14, p. 34, where it is implied without reference to *McDougall* that no such estate exists.)

The problems arising from a reversion are illustrated in this case by the parties' arguments concerning the statute of limitations. Plaintiff says the statute is no bar because she "automatically" came into possession in 1972. If this were the case, minor breaches, long past the normal five-year bar, would cloud the chain of title. Alternatively, if an action in ejectment is the remedy for a breach of such a condition, premature actions for minor breaches might be induced. Limiting a grantor to a right of reentry upon breach avoids these problems.

*mentary Sch. Dist.* (1973) 30 Cal.App.3d 579, 587-588 [106 Cal.Rptr. 467].) These cases concern the issue whether the remedy of reversion was intended by the grantors. We are concerned here not with the intention to create the remedy, but with the conditions to which the remedy applies. It is but a short step from the one to the other. The policies directing clarity of expression apply with as much force to the terms of a reversion condition as to the existence of the remedy. It follows that the precise event which triggers the reversion must be plainly expressed in the deed. In case of doubt, the deed must be read to preclude reversion.

These principles necessarily preclude the use of extrinsic evidence to clarify a latent ambiguity in the terms of the reversion condition.[4] It is for the courts to independently determine from the face of the deed whether it requires reversion in the circumstances at issue. To survive a demurrer the *deed* must show a clear intention to allow a reversion upon the *particular* contingency which is alleged to have occurred.

### B.

We apply these principles to the reversion language in the deed. The deed grants real property to the City of South Lake Tahoe. It requires, as a condition of the grant, that the "grantee" construct, by June 30, 1972, office buildings upon the property "for the use and occupancy of various basic municipal government departments . . . including by way of example and without limitation, grantee's Building, Planning, and Recreation Departments and City Manager; but expressly excluding [its] use . . . for corporate yard purposes."

These provisions unmistakably contemplate use of the property for *city* government purposes of the kind enumerated. The first reversion condition, as to which no issue is tendered, is tied to compliance with these conditions. At issue is the second reversion condition, which provides: "*If* after the Grantee has complied with all of said covenants and agreements and has constructed or caused to be constructed said office building or buildings upon said real property, *said real property at any time ceases to be and is no longer used for government office purposes*, then the title to said real property shall automatically revert to the Grantors herein, their heirs, successors and assigns." (Italics added.)

---

[4]*Cherokee Valley Farms, Inc.* v. *Summerville Elementary Sch. Dist.* (1973) 30 Cal. App.3d 579, 586 [106 Cal.Rptr. 467], suggests the contrary in dicta but without analysis of the implications of the strict drafting rule.

■ The trial court determined that when the deed says "ceases to be ... used for *government* purposes" it means *any* government office, state, county, or city, including, obviously, the County of El Dorado. The deed is easily susceptible of this reading since it displays the grantors' command of words of narrower governmental import ("city," "municipal") implying a deliberate use of "government" in its broader signification. The deed can also be read in context as the plaintiff avers. However, a showing of latent ambiguity is insufficient to survive a demurrer. If the language in the deed will bear a reasonable construction which avoids a reversion, that construction must be adopted. (See *Hawley* v. *Kafitz, supra*, 148 Cal. at pp. 394-395.) We are thus compelled to accept the trial court's reading.

We also affirm on an alternate ground. By accepting *arguendo* plaintiff's construction, we are presented with another ambiguity, whether *exclusivity* of city use should be *read into* the condition. We substitute "city government office" in the deed where "government office" occurs. The meaning thus ascribed to the *habendum* clause does not entitle plaintiff to quiet title. ■ No right of reversion inheres in such a clause (*Fitzgerald* v. *County of Modoc* (1913) 164 Cal. 493 [129 P. 794]), even if the purposes declared are exclusive. (*Beran* v. *Harris* (1949) 91 Cal.App.2d 562, 564-565 [205 P.2d 107] ["'Property is to be used for residence and service station purposes *only.'*" (Italics added.)].)[5] ■ The transformation of the second condition is also of no avail as it would then read, "[i]f ... said real property at any time ceases to be and is no longer used for *city* government office purposes, then the title to said real property shall automatically revert to the Grantors ...." Reasonably read, this produces an automatic reversion only if the property is no longer used for *any* city government purposes, a condition not alleged.

The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 28, 1982.

---

[5]We do not mean to imply that in such circumstances the grantor is without remedy; rather, that the drastic remedy of revocation of title is not available. (See, e.g., *Mulvey* v. *Wangenheim* (1913) 23 Cal.App. 268 [137 P. 1106].)