[No. A057744. First Dist., Div. One. Apr. 29, 1993.]

DOROTHY ANN JULIO SANDERS et al., Plaintiffs and Appellants, v. EAST BAY MUNICIPAL UTILITY DISTRICT et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions to be published follow.

**COUNSEL**

Cox, Garrett, Nagle & Lally and David Randall Fischer for Plaintiffs and Appellants.

Victor J. Westman, County Counsel, Sharon L. Anderson, Deputy County Counsel, Thomas Lacchia, William M. McMillan, Daniel C. Murphy,

Antonio R. Anziano, G. Michael Harrington, Rinehart & Amspoker, Todd A. Amspoker, Bold & Polisner, Carl P. A. Nelson and Jeffrey D. Polisner for Defendants and Respondents.

## OPINION

**DOSSEE, J.**—This appeal concerns the dismissal of a complaint filed in the Superior Court of Contra Costa County on November 28, 1990, by twenty-one individuals and the fiduciaries of three estates (hereafter appellants) against six defendants—East Bay Municipal Utility District (hereafter EBMUD), the City of Concord (hereafter City), State of California (hereafter State), Contra Costa County Water District (hereafter Water District), County of Contra Costa (hereafter County), and Pacific Gas & Electric Company (hereafter PG&E). The first cause of action sought to quiet title in two parcels of property, designated the "Hook" parcel and the "Galindo" parcel; the second cause of action requested an order to compel reconveyance of property interests in the two parcels; and the third cause of action demanded damages based on a theory of inverse condemnation. The defendants subsequently filed motions for summary judgment and for judgment on the pleadings. The court granted both motions in an order filed April 1, 1992, and entered a judgment dismissing the complaint against all defendants.

Appellants claim two sources of title: reversionary interests under two deeds executed by predecessors in interest in 1890 and a quitclaim deed dated August 15, 1988. We affirm the judgment of dismissal to the extent that it reflects a rejection of appellants' alleged reversionary interests. But we find that the alleged quitclaim deed presents triable issues of fact with respect to certain causes of action against the City and PG&E. We will discuss first the issue of reversionary interests.

Appellants claim reversionary interests under two deeds to Southern Pacific Railroad Company (hereafter Southern Pacific), executed in 1890, conveying a right-of-way for construction of a railroad branch line in the San Ramon Valley of Contra Costa County. The first is a grant deed of E. Hook, Maranda E. Hook, and Jas. S. Hook, conveying 4.28 acres for a consideration of $1, which contains the following disputed language: "Provided that [the railroad] shall complete said San Ramon Branch of its Railroad within one year from the date hereof and shall also continuously thereafter work and operate the same."

The second is a grant deed of John C. Galindo and Marina A. de Galindo, conveying 9.71 acres for the same consideration of $1, which states that the property is conveyed upon certain "express conditions," including the following: "That in event of the abandonment of . . . said San Ramon Branch

of said Railroad after its construction, the land herein conveyed to said second party [Southern Pacific] shall revert to said first parties and a discontinuance, after the completion of said road of *either* passenger or freight service (except from accident or other unavoidable cause) on said road shall constitute an abandonment within the meaning of this instrument." (Italics added.)

It is undisputed that Southern Pacific discontinued passenger service on the railway in December 1934 and that it abandoned freight service in August 1987, pursuant to an order of the Interstate Commerce Commission. During the period that it operated the line, Southern Pacific conveyed to defendants the easements and other interests that are described in the judgment.[1] These include an easement to EBMUD through which it now transmits its entire supply of water to customers in the East Bay and an avigation easement to the County used by the Buchanan Field Airport near Concord, California.

The appellants consist of the heirs or successors of the Hooks and Galindos and certain speculators who engaged in the business of purchasing abandoned railway property as a real estate venture. After informing the heirs of their possible reversionary interests in the property, the speculators entered into an agreement with them whereby they acquired certain percentage shares in the two presumed reversionary interests in exchange for a promise to undertake litigation to establish title. On December 30, 1987, the persons claiming reversionary interests to each parcel recorded separate notices of intent to preserve interest in compliance with the Marketable Record Title Act of 1982. On August 15, 1988, Southern Pacific gave quitclaim deeds to the two parcels to a group of individuals composed largely of appellants.

---

[1]With respect to the Hook parcel, paragraph 2 of the judgment refers to "(a) Easement in favor of City of Concord dated December 14, 1953, . . . [¶] (b) Easement in favor of City of Concord dated June 23, 1965. . . . [¶] (c) An Easement for drainage facilities to the City of Concord . . . [¶] (d) Avigation easement in favor of Contra Costa County dated May 31, 1985 . . . [¶] (e) Easement in favor of Contra Costa County Water District, now Contra Costa Water District, dated July 5, 1977." With respect to the Galindo parcel, paragraph 3 of the judgment refers to "(a) Easement in favor of East Bay Municipal Utility District Dated November 13, 1959, . . . [¶] (b) Supplement to above-mentioned East Bay Municipal Utility District Easement dated October 25, 1966. . . [¶] (c) Easement in favor of City of Concord dated December 14, 1953, . . . [¶] (d) Easement in favor of City of Concord dated June 23, 1965 . . . [¶] (e) Easement in favor of Contra Costa County Water District, now Contra Costa Water District, dated May 20, 1964 . . . [¶] (f) Easement in favor of Contra Costa County Water District, now Contra Costa Water District, dated July 5, 1977 . . . [¶] (g) Easement in favor of State of California recorded January 4, 1962 . . . [¶] (h) Fee simple interest conveyed to State of California, as evidenced by deed recorded March 9, 1962 . . . [¶] (i) Relinquishment of access rights recorded March 9, 1962 . . . ."

In the trial court, appellants' suit was predicated on the theory that the Hook and Galindo deeds each contained a power of termination[2] which could be exercised by the grantors' heirs and assignees upon abandonment of freight service on the branch line. The trial court found that the Hook deed did not contain a power of termination and that the power of termination in the Galindo deed expired around 1940. Both findings draw support from the general principles governing interpretation of conditions subsequent in deeds.

■ As a general principle of equity, it is well established that " '[f]or-feitures . . . are not favored by the courts, and are never enforced if they are couched in ambiguous terms' . . . . 'The burden is upon the party claiming the forfeiture to show that such was the unmistakable intention of the instrument. If the agreement can be reasonably interpreted so as to avoid forfeiture, it is our duty to do so.' " (*McNeece* v. *Wood* (1928) 204 Cal. 280, 284 [267 P. 877].) Thus Civil Code section 1442 states: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."

This principle is commonly applied to conditions subsequent in deeds that reserve in the grantor a power of termination. In a leading decision, *Hawley* v. *Kafitz* (1905) 148 Cal. 393, 394-395 [83 P. 248], the appellate court upheld the trial court's finding that a deed provision created a personal covenant rather than a condition subsequent: "We think there can be no question of the accuracy of the construction placed upon it by the court. Conditions subsequent are those which in terms operate upon an estate conveyed and render it liable to be defeated for breach of the conditions. Such conditions are not favored in law because they tend to destroy estates, and no provision in a deed relied on to create a condition subsequent will be so interpreted if the language of the provision will bear any other reasonable construction. While no precise form of words is necessary to create a condition subsequent, still it must be created by express terms or by clear implication. . . . There must be language used which is so clear as to leave no doubt that the grantor intended that an estate upon condition subsequent should be created—language which *ex proprio vigore* imports such a condi-tion." (See also *Gramer* v. *City of Sacramento* (1935) 2 Cal.2d 432, 437-438 [41 P.2d 543]; *Springmeyer* v. *City of South Lake Tahoe* (1982) 132 Cal.App.3d 375, 380 [183 Cal.Rptr. 43].)

■ Applying these principles, we agree that the Hook deed contained a personal covenant to build and operate the branch line rather than a condi-tion subsequent. No decision, to our knowledge, has ever held that the words

---

[2]We use the broad, generic term "power of termination" employed in Civil Code section 885.010 without attempting to distinguish between the types of future interest in grantor recognized at common law. For a discussion of common law terminology, see *Alamo School Dist.* v. *Jones* (1960) 182 Cal.App.2d 180 [6 Cal.Rptr. 272].

"provided that" create a condition subsequent. Appellants rely instead on the argument that the term "condition" in the granting clause must be read as applying to this provision. The granting clause states that the conveyance is given in consideration of the sum of $1 and "in further consideration of the conditions, provisions and covenants hereinafter contained." Only one of the following paragraphs, appellants argue, appears to create a condition—the provision at issue here. The other paragraphs relate to covenants to build and maintain fences and crossings. Hence, by process of elimination, the term "condition" must be construed as applying to the provision to build and operate a branch line.

We note, first, that the word "condition" alone will not necessarily suffice to create a condition subsequent. (See *Guaranty etc. Co.* v. *Recreation G. Club* (1910) 12 Cal.App. 383 [107 P. 625].) Appellants cite certain early California decisions upholding conditions subsequent based solely on use of the word "condition." (*Papst* v. *Hamilton* (1901) 133 Cal. 631 [66 P. 10]; *Quatman* v. *McCray* (1900) 128 Cal. 285 [60 P. 855].) But later decisions display increasing judicial disfavor of conditions subsequent. In *Victoria Hospital Assoc.* v. *All Persons* (1915) 169 Cal. 455, 460 [147 P. 124], the court described the words "on condition that" as "apt and appropriate words . . . to create a condition," but nevertheless construed a deed with this phrase as creating a personal covenant. Later, *Hasman* v. *Union High School* (1926) 76 Cal.App. 629, 631 [245 P. 464], construed a provision as creating a covenant despite use of the expressed intention that the property would " '. . . otherwise . . . revert to and become property of [the grantor].' " (Accord, *Booth* v. *County of Los Angeles* (1932) 124 Cal.App. 259 [12 P.2d 72].) Displaying a similar bias against conditions subsequent, *Gramer* v. *City of Sacramento, supra,* 2 Cal.2d 432, held that the language " '. . . under the conditions following . . .' " (*id.* at p. 434) did not create a condition subsequent, relying in part on the absence of words of "forfeiture or reverter." (*Id.* at p. 439.)

In any event, we do not consider that the provision at issue comes within the rulings of the earlier California cases on which appellants rely. The phrase "conditions, provisions and covenants" can be taken as a stock formula without any specific reference to a particular paragraph; it is not difficult to construe the word "condition" as surplusage since it is followed by the word "provisions" which is unquestionably redundant. Accordingly, the term "condition" does not unambiguously express a condition as required by the principle of *Hawley* v. *Kafitz, supra,* 148 Cal. at pages 393-394.

Our interpretation is also fortified somewhat by "the fact that no such words as 'heirs, executors, and assigns' of the grantor were used." (*Alamo*

*School Dist.* v. *Jones, supra,* 182 Cal.App.2d 180, 187.) No doubt, the absence of this language is not dispositive, but it still has some limited relevance. Since a power of reversion is an interest in real property, the language might appropriately have been used if such an interest were intended. (Cf. *Savanna School Dist.* v. *McLeod* (1955) 137 Cal.App.2d 491, 496 [290 P.2d 593].)

We conclude that the provision in the Hook deed can best be interpreted as no more than a covenant of Southern Pacific to the grantors to build and maintain the railroad. ■ In contrast, the parties concede that the Galindo deed created a power of termination. With respect to this deed, the issue of interpretation concerns the period when the power was capable of being exercised.

As noted above, the Galindo deed was conveyed on condition that the property would revert to the grantors on abandonment of the railroad, and abandonment was defined to mean "a discontinuance after the completion of said road of either passenger or freight service." The provision is patently ambiguous: it can be read as saying that the grantors would have two opportunities to exercise a power of termination, i.e., upon the discontinuance of passenger or freight service in the future; or that they would have one opportunity to exercise such a power, i.e., upon the first occurrence of one of the two events defined as an abandonment—discontinuance of passenger or freight service.

From the point of view of the grantors' intent, both interpretations have a degree of plausibility. We consider, however, that we are bound by the rule of strict interpretation of conditions subsequent to choose the interpretation that gives the power of termination the narrowest scope. (*Gramer* v. *City of Sacramento, supra,* 2 Cal.2d 432, 439; *Springmeyer* v. *City of South Lake Tahoe, supra,* 132 Cal.App.3d 375, 382; see Simes, *Restricting Land Use in California by Rights of Entry and Possibilities of Reverter* (1962) 13 Hastings L.J. 293, 298-299.) This is obviously the interpretation giving the grantors a single opportunity to exercise a power of termination. By this interpretation, the power of termination in the Galindo deed could only be exercised following the earliest event constituting an abandonment, i.e., the termination of passenger service in 1935.[3]

Appellants are now barred by Code of Civil Procedure section 320 from exercising the power of termination in the Galindo deed. The Marketable

---

[3]We see nothing in *Goodman* v. *Southern Pacific Co.* (1956) 143 Cal.App.2d 424 [299 P.2d 321], that is inconsistent with this interpretation. The *Goodman* decision states only that the waiver of a power of termination arising from occurrence of a particular condition subsequent does not preclude the possible occurrence of another condition subsequent in the future.

Record Title Act, enacted in 1982, preserves the former statute of limitation periods applying to a right of reentry arising before its enactment. Civil Code section 885.070, subdivision (b), provides: "If breach of the restriction to which the fee simple estate is subject occurred before the operative date of this chapter and the power of termination is not exercised before the operative date of this chapter, the power of termination shall be exercised . . . within the earlier of the following times: [¶] (1) The time that would be applicable pursuant to the law in effect immediately prior to the operative date of this chapter. [¶] (2) Five years after the operative date of this chapter." On closely parallel facts, the court in *Concord & Bay Point Land Co.* v. *City of Concord* (1991) 229 Cal.App.3d 289, 299 [280 Cal.Rptr. 623], concluded "the applicable limitation period under prior law is provided by Code of Civil Procedure section 320 (hereafter section 320): five years running from the breach of the condition subsequent."

Though it refers somewhat obscurely to a claim asserted through "entry upon real estate," Code of Civil Procedure section 320 is clearly applicable to suits for enforcement of a power of termination. The *Concord & Bay Point Land Co.* decision observes, "[t]he interest held by the grantor of a fee subject to condition subsequent has commonly been referred to as a 'right of reentry' as well as a power of termination. [Citations omitted.] Early cases held that the grantor could enforce the condition and declare a forfeiture only by making an actual entry onto the land, while the later trend has been to make notice of termination, or the commencement of an action based on breach of the condition, sufficient to declare a forfeiture. [Citations.] Section 320 dates from the very dawn of California's legal system, having survived with only minor amendment from 1850. [Citation.] It is thus not surprising that the Legislature did not distinguish between entry onto the land and other means of enforcing a power of termination." (229 Cal.App.3d at pp. 300-301.)

Under Code of Civil Procedure section 320, a suit to enforce a power of termination must be commenced within a year after entry is made or within five years from accrual of the right to enter. The right to reentry accrues upon breach of the condition giving rise to the power of termination. (*Concord & Bay Point Land Co.* v. *City of Concord, supra,* 229 Cal.App.3d at p. 301.) In the case at bar, the condition in the Galindo deed creating a right of reentry was breached at the end of 1934 when passenger service was discontinued on the San Ramon branch line. The grantors' right to bring suit to enforce their power of termination expired five years later near the end of 1939.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

The judgment is reversed to the extent that it dismisses appellants' first cause of action against PG&E and appellants' first and third causes of action against the City.[6] In all other respects, the judgment is affirmed. Each party to bear its own costs.

Strankman, P. J., and Stein, J., concurred.

A petition for a rehearing was denied June 1, 1993.

---

*See footnote, *ante*, page 125.

[6]Our reasons for partially reversing the judgment in favor of the City have no application to paragraphs 2.(a) and 3.(c) of the judgment decreeing that appellants' interests in the Hook and Galindo parcels are subject to the City's recorded easement "dated December 14, 1953, and recorded at Book 2261, Page 404 of the Official Records of Contra Costa County." The portions of the judgment referring to this recorded easement of the City in effect constitute a proper summary adjudication of a material fact and should be so regarded on remand.